UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X  Case No. 17-cv-02452 (ALC) (SN)
CBRE, INC.,

                                        Plaintiff,

              -against-


THE PACE GALLERY OF NEW YORK, INC. AND
THE PACE GALLERY LLC, D/B/A PACE GALLERY,

                                        Defendants.
-------------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION TO PRECLUDE PUTATIVE EXPERT SUZY A. REINGOLD**


AARON RICHARD GOLUB, ESQUIRE, P.C.
Attorneys for Defendants
24 East 64th Street- Fifth Floor
New York, New York 10065
ph: (212) 838-4811
fx: (212) 838-4869

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT………………………………………………………………1

POINT I………………………………………………………………………………………...2

REINGOLD'S EXPERT OPINIONS CONCERNING FIDUCIARY DUTIES AND
CONFLICTS OF INTEREST ARE ADMISSIBLE……………………………………………2

     A.    Reingold's Expert Opinions Concerning Fiduciary Duties and Conflicts of
Interest Are Not Impermissible Legal Conclusions…………………………………2

     B.    Reingold's Expert Opinions Concerning Fiduciary Duties and Conflicts of
Interest Are Not Impermissible Attorney Argument ……………………………12

     C.    Reingold's Expert Opinions About Conflicts of Interest Are Reliable and
Helpful………………………………………………………………………………14

POINT II………………………………………………………………………………………17

REINGOLD'S EXPERT OPINIONS CONCERNING DAMAGES SET FORTH IN
REINGOLD'S DECLARATION ARE ADMISSIBLE...……………………………………17

     A.    Reingold's Expert Opinions Concerning Damages in Reingold's Declaration
Are Not Speculative and Conclusory………………………………………………17

     B.    Reingold's Expert Opinions Concerning Damages in Reingold's Declaration
Are Not Untimely……………………………………………………………………20

POINT III……………………………………………………………………………………...25

REINGOLD MUST BE PERMITTED TO TESTIFY CONCERNING THE TERM
"FULL MARKET COMMISSION"………………………………………………………….25

CONCLUSION………………………………………………………………………………..25

# TABLE OF AUTHORITIES

Page(s)

Cases

Allen v. City of New York,
  466 F.Supp.2d 545 (S.D.N.Y. 2006) ...................................................................3

American Home Assur. Co. v. Masters' Ships Mgmt. S.A.,
  2005 WL 159592 (S.D.N.Y. Jan. 25, 2005)........................................................9

Aquino by Convergent Distributors of Texas, LLC v. Alexander Capital, LP,
  632 B.R. 7 (S.D.N.Y. 2021) ..........................................................................12, 13

Arista Records LLC v. Lime Group LLC,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011) ...............................................................22

Beede v. Stiefel Laboratories, Inc.,
  2016 WL 916418 (N.D.N.Y. Mar. 7, 2016)...............................................3, 7, 15

Berk v. Bates Advertising USA, Inc.,
  1998 WL 726030 (S.D.N.Y. Oct. 14, 1998) ......................................................15

Bigelow v. R.KO Radio Pictures, Inc.,
  327 U.S. 251 (1946)......................................................................................19, 20

Boucher v. US. Suzuki Motor Corp.,
  73 F.3d 18 (2d Cir. 1996)....................................................................................20

Cameron v. City of New York,
  598 F.3d 50 (2d Cir. 2010) .................................................................................11

Campbell v. Metropolitan Prop. and Cas. Ins. Co.,
  239 F.3d 179 (2d Cir. 2001) ...............................................................................18

Carleton v. Winter,
  901 A.2d 174 (D.C. 2006)....................................................................................5

Caruso v Bon Secours Charity Health Sys., Inc.,
  703 Fed. Appx. 31 (2d. Cir.  2017).....................................................................24

Cates v. Trustees of Columbia Univ. in City of New York,
  2019 WL 8955333 (S.D.N.Y. Oct. 25, 2019) ...................................................10

Choi v. Tower Research Capital LLC,
  2 F.4th 10 (2d Cir. 2021).....................................................................................12

Coquina Invs. v. Rothstein,
  2011 WL 4949191 (S.D.Fla. Oct. 18, 2011) ................................................15, 16

Grdinich v. Bradlees,
  187 F.R.D. 77 (S.D.N.Y. 1999)..........................................................................22

Hewitt v. Metro-North Commuter Railroad,
  244 F.Supp.3d 379 (S.D.N.Y. 2017) ...................................................................7

In re Golden,
  2022 WL 362913 (Bkrtcy.E.D.N.Y. Feb. 4, 2022) ...............................4, 10, 12

In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,
  643 F.Supp.2d 482 (S.D.N.Y. 2009) ...................................................................7

In re Namenda Direct Purchaser Antitrust Litig.,
  331 F.Supp.3d 152 (S.D.N.Y. 2018) ..................................................................10

In re Platinum-Beechwood Litig.,
    469 F.Supp.3d 105 (S.D.N.Y. 2020) ............................................... 4, 5, 6, 8, 12, 25
In re Rezulin Products Liab. Litig.,
    309 F.Supp.2d 531 (S.D.N.Y. 2004) ......................................................... 11, 16
Indu Craft, Inc. v. Bank of Baroda,
    47 F.3d 490 (2d Cir. 1995) ............................................................................. 20
Kumho Tire Co. v. Carmichael,
    526 U.S. 137 (1999) ....................................................................................... 18
LaSalle Bank Nat. Ass'n v. CIBC Inc.,
    2012 WL 466785 (S.D.N.Y. Feb. 14, 2012) ................................................... 17
Levy v. Bessmer Trust Co., N.A.,
    2000 WL 1300402 (S.D.N.Y. Sept. 14, 2000) ................................................ 10
Mahoney v. JJ Weiser and Co., Inc.,
    2007 WL 3143710 (S.D.N.Y. Oct. 25, 2007) ................................................... 8
McBeth v. Porges,
    2018 WL 5997918 (S.D.N.Y. Nov. 15, 2018) ...................................... 3, 4, 12, 15
McCullock v. H.B. Fuller Co.,
    61 F.3d 1038 (2d Cir. 1995) ........................................................................... 18
MEI Int'l, Inc. v. Schenkers Int'l Forwarders, Inc.,
    807 F.Supp. 979 (S.D.N.Y. 1992) ............................................................. 19, 20
Nobile v. Schwartz,
    265 F.Supp.2d 282 (S.D.N.Y. 2003) ............................................................... 4
Olutosin v. Gunsett,
    2019 WL 5616889 (S.D.N.Y. Oct. 31, 2019) ................................................. 10
Patterson v. Balsamico,
    440 F.3d 104 (2d Cir. 2006) ..................................................................... 21, 23
Point Prods. A. G. v. Sony Music Entmt., Inc.,
    2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) .............................................. 21, 24
Posner v. Equity Title Ins. Agency, Inc.,
    222 P.3d 775 (Utah App. 2009) ..................................................................... 4, 5
Primavera Familienstifung v. Askin,
    130 F.Supp.2d 450 (S.D.N.Y. 2001) .............................................................. 16
Process Am., Inc. v. Cynergy Holdings, LLC,
    839 F.3d 125 (2d Cir. 2016) ........................................................................... 20
Raishevich v. Foster,
    247 F.3d 337 (2d Cir. 2001) ........................................................................... 19
Roniger v. McCall,
    2000 WL 1191078 (S.D.N.Y. Aug. 22, 2000) ................................................. 9
S.E.C. v. U.S. Environmental, Inc.,
    2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002) ..................................... 3, 8, 9, 15
Scentsational Technologies, LLC v. Pepsi, Inc.,
    2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018) ................................................. 16
SLSJ, LLC v. Kleban,
    277 F.Supp.3d 258 (D.Conn., 2017) .......................................................... 11, 12
Sohaey v. Van Cura,
    240 Ill. App. 3d 266 (Ill. App. Ct. 1992) ......................................................... 5

Sullivan v. Ford Motor Co.,
   2000 WL 343777 (S.D.N.Y. Mar. 31, 2000) ....................................................9
U.S. v. Bilzerian,
   926 F.2d 1285 (2d Cir. 1991).................................................... 10, 11, 24
U.S. v. Bronston,
   658 F.2d 920 (2d Cir. 1981).................................................................11
Venture Tech., Inc. v Nat'l Fuel Gas Co.,
   1981 WL 2013 (W.D.N.Y. Jan. 9, 1981)........................................................20
Ward v. Nat'l Geog. Soc'y,
   2002 WL 27777 (S.D.N.Y. Jan. 11, 2002)......................................................22
Wechsler v. Hunt Health Sys., Ltd.,
   381 F.Supp.2d 135 (S.D.N.Y. 2003) ..........................................................20
Williams v. Morton,
   343 F.3d 212 (3d Cir. 2003).................................................................22
World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.,
   694 F.3d 155 (2d. Cir. 2012)................................................................23
Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC,
   571 F.3d 206 (2d Cir. 2009)............................................................20, 23

Rules

FRCP 26 ...........................................................................................21
FRCP 37 ...........................................................................................21
FRE 702...........................................................................................18
FRE 704............................................................................................3

## PRELIMINARY STATEMENT

Defendants' expert Suzy Reingold ("Reingold") is eminently qualified to testify at trial concerning the salient matters in this action, particularly with respect to fiduciary duties/conflicts of interest and the calculation of damages.  Her qualifications embarrassingly exceed those of Plaintiff's expert Richard Michaels ("Michaels"), who has virtually no relevant experience and who has never been retained as an expert.  Reingold **_will not_** testify at trial that Plaintiff breached its fiduciary duties owed to Defendants and failed to disclose a conflict of interest of Plaintiff's own creation.  Instead, Reingold will testify concerning the fiduciary duties that a real estate broker owes to its clients, how a broker should perform its fiduciary duties in accordance with industry standards and custom and practice, and how Plaintiff actually performed.  Reingold's testimony concerning specialized, industry-specific subjects, such as comps and CoStar reports,[1] undoubtedly will assist the jury.  The jury will need such specialized knowledge to render its ultimate determination as to whether Plaintiff failed to exercise the standard degree of loyalty observed in the real estate industry and breached its fiduciary duties owed to Defendants.

Reingold's expert testimony is legally reliable.  She based her opinions on the knowledge gained from her experiences during her 50-year career in the real estate industry, including working at CBRE (2003-2005).  Reingold managed **_more than 500 brokers_** and **_trained them with respect to fiduciary duties and conflicts of interest_**.  If the Court determines that Reingold

---

[1] "Comps," a real estate term of art, refers to documents and communications comparing real estate properties for sale or lease that possess the same or similar characteristics, such as size, age, location and other metrics.  The "CoStar Report" refers to a 35-page Chelsea CoStar Report for the entire Chelsea neighborhood sent by Stuart Siegel ("Siegel"), the principal CBRE broker assigned to mainly perform all of Plaintiff's obligations under the March 2014 Agreement, to Lisa Weinberg ("LW"), VP of Leasing of Wenat Realty Associates LP ("Weinberg"), Defendants' landlord and counterparty in lease negotiations.  LW is the daughter of Sam Weinberg ("SW"), Weinberg's principal.  Collectively, the 12 Chelsea comps and asking prices and the CoStar Report sent by Siegel to LW are referred to as the "Counterparty Information."

impermissibly rendered some legal conclusions, the Court should not preclude her from testifying, but instead should permit her to testify concerning her admissible expert opinions.

Reingold also must be permitted to testify concerning the damages calculations set forth in her Declaration, sworn to August 10, 2020 ("Reingold's Declaration") (ECF 279-4, ECF 212), which concerned the effect of rent, tax and operating expenses escalations on a tenant's total rent.  Reingold's testimony is legally reliable.  It is based on her experience accrued throughout her 50-year real estate career, during which Reingold focused on leasing and served as Senior VP of Leasing or Director of Leasing at several real estate companies.  Reingold lectured at New York University's Real Estate Institute concerning lease documents.  Reingold's testimony is needed to oppose the self-serving claims made in Stuart Siegel's Declaration, sworn to July 7, 2020 ("Siegel's Declaration") (ECF 279-9, ECF 202), concerning the purported economic benefit of Siegel allegedly advising Defendants to reject a 5% escalation and seek a 3% escalation.  Reingold's Declaration's discussion of Siegel's foregoing claims was timely as it was submitted in response to Siegel's Declaration, which was submitted following the close of discovery.  Preclusion of Reingold's damages testimony would irreparably prejudice Defendants.

**POINT I**
**REINGOLD'S EXPERT OPINIONS CONCERNING FIDUCIARY DUTIES AND**
**CONFLICTS OF INTEREST ARE ADMISSIBLE**

**A.**   **Reingold's Expert Opinions Concerning Fiduciary Duties and Conflicts of Interest**
**Are Not Impermissible Legal Conclusions**

Section II of Plaintiff's Memorandum of Law, dated October 28, 2022 ("PM," pp.13-19, ECF 278), is built on a fundamental misunderstanding of law and a prejudicial misreading of Reingold's testimony.  Plaintiff falsely asserts that ***the entirety of*** "Reingold's opinions on fiduciary duties and conflicts of interest are inadmissible legal conclusions" (Id., p.13). Plaintiff's failure to distinguish between purportedly admissible and inadmissible expert opinions

(instead moving to eliminate ***the entirety of*** Reingold's expert testimony) underscores the lack of seriousness with which Plaintiff has approached its <u>Daubert</u> motion.  Though Plaintiff focuses ***exclusively*** on Reingold's statements that Plaintiff breached its fiduciary duties, ***<u>Reingold will not testify at trial that Plaintiff breached these fiduciary duties</u>***.  Instead, Reingold—utilizing her vast, unassailable experience managing and instructing brokers with respect to fiduciary duties and conflicts of interest (<u>see</u> Exs.20, 21)—will contextualize the evidence available to the jury to enable the jury to understand the real estate industry fiduciary duty and conflicts of interest standards that Plaintiff was operating under with respect to its exclusive representation of Defendants, as well as standard industry practice by brokers to meet such standards.  Expert testimony concerning complex real estate standards, principles and terminology not commonly known by laymen will provide crucial context to allow the jury to form its legal conclusions.

Pursuant to FRE 704(a), "An opinion is not objectionable just because it embraces an ultimate issue.  In fact, an expert may present factual conclusions that "embrace[] an ultimate issue to be decided by the jury." <u>S.E.C. v. U.S. Environmental, Inc.</u>, 2002 WL 31323832, at *4 (S.D.N.Y. Oct. 16, 2002); <u>Allen v. City of New York</u>, 466 F.Supp.2d 545, 549 (S.D.N.Y. 2006); <u>Beede v. Stiefel Laboratories, Inc.</u>, 2016 WL 916418, at *24 (N.D.N.Y. Mar. 7, 2016):

> "Indeed, 'if a witness (especially an expert) provides a solid foundation and explanation on an issue for which the factfinder needs assistance, the factfinder might be left hanging if the witness cannot cap off the testimony with a conclusion about the ultimate issue to which the expert is testifying'…In fact, 'testimony that amounts to 'less than a full narrative...is like the joke without the punchline, the mystery without the last page,' particularly with respect to experts, where 'a conclusion on the ultimate issue often ties the witness' testimony together into a coherent whole''" (internal citations omitted).

Experts may opine concerning "the elements of [a] legal conclusion."  In <u>McBeth v. Porges</u>, 2018 WL 5997918, *6 (S.D.N.Y. Nov. 15, 2018), the Court held that an expert "can even express his opinion on ***<u>the elements of the legal conclusion</u>***, as long as he does not express

3

an opinion directly on the legal conclusion" and concluded that although the expert could not testify that plaintiff's reliance on certain statistics was unreasonable, he could testify concerning "the factors that inform whether [plaintiff's] reliance was reasonable…"  Id.; In re Golden, 2022 WL 362913, at *14 (Bkrtcy.E.D.N.Y. Feb. 4, 2022) ("…[W]here an expert testifies, based on his or her experience and expertise, as to matters that may assist the court, but does not offer legal opinions, that testimony may be considered.  And this does not change merely because the expert's opinion relates to a topic or subject matter where laws and regulations also play a role").

Contrary to Plaintiff's arguments (PM, pp.13-19), an expert witness may testify at trial concerning fiduciary duties.  In In re Platinum-Beechwood Litig., 469 F.Supp.3d 105, 116 (S.D.N.Y. 2020), the Court held that although an expert could not testify that defendants breached their fiduciary duty owed to plaintiff, the expert:

> "…[M]ay testify as to (1) what a fiduciary…in a given context would ordinarily do according to relevant industry standards, (2) what the defendants here did instead, and (3) why the latter had the effect of defrauding or harming [plaintiff]."

The Court further held that the expert could testify concerning "[h]ow investment managers must perform their duties in accordance with relevant industry standards…." "[h]ow [defendants]… had a fiduciary duty to put [plaintiff's]...interests above the interests of [defendants]…" and how defendants placed their interests above those of plaintiff and, in so doing, harmed plaintiff.  Id. The foregoing expert testimony was deemed admissible and not "legal conclusion[]" because it:

> "…[S]eek[s] to contextualize the evidence so that the jury may understand the standards under which [defendants] were operating with respect to management of [plaintiff's] assets, as well as standard industry practices by investment managers to meet such standards."  Id., at 117.

Whether a fiduciary failed to exercise the degree of care typically observed in an industry requires expert evidence.  See Nobile v. Schwartz, 265 F.Supp.2d 282, 288 (S.D.N.Y. 2003); see also Posner v. Equity Title Ins. Agency, Inc., 222 P.3d 775, 784 (Utah App. 2009), abrogated on

other grounds by <u>Coroles v State</u>, 349 P.3d. 739 (Utah 2015) ("Because we have determined that a layperson could not have readily comprehended Coldwell's fiduciary duties in this complex [real estate] transaction, we agree with the trial court that expert testimony is necessary to prove Coldwell's alleged breach of those duties"); <u>Carleton v. Winter</u>, 901 A.2d 174, 179 (D.C. 2006) ("…[W]e are not persuaded that a lay person has 'common knowledge' to determine the appropriate standard of care for a realtor under the circumstances here.  Real estate agents owe manifold duties to persons they represent; whether and to what extent those duties include 'vouching' for careful performance by a home inspector they recommend are questions on which only the standards of the profession—as articulated by an expert—can enlighten a jury"); <u>Sohaey v. Van Cura</u>, 240 Ill. App. 3d 266, 286-87 (Ill. App. Ct. 1992), <u>aff'd</u>, 634 N.E.2d 707 (1994) ("Parties frequently use experts to establish the standard of care required by professionals who are alleged to have breached professional standards.  Here, establishing the standard of care for real estate brokers was critical for plaintiffs").  As breach of fiduciary duty is a hybrid tort, expert testimony as to the standard of care owed by real estate brokers to their clients is critical.

Reingold's testimony is directly comparable to the expert testimony deemed admissible in <u>Platinum-Beechwood</u>, <u>supra</u>, and serves the same purpose of arming the jury with the industry custom and practice knowledge needed to draw its own legal conclusions.  Setting aside the cherry-picked excerpts in which Reingold stated that Plaintiff breached its fiduciary duties owed to Defendants (***which Defendants do not intend to introduce at trial***), Reingold's Report[2]—as expounded upon during her September 12, 2019 deposition—is full of admissible expert opinions concerning fiduciary duties and conflicts of interest, including, <u>inter</u> <u>alia</u>:

(1) "…[W]hat a fiduciary…in a given context would ordinarily do according to relevant

---

[2] Expert Report of Suzy A. Reingold, dated July 10, 2019 (ECF 279-1), referred to as "R."

industry standards…," "[h]ow [defendants] must perform their duties in accordance with relevant industry standards…" and "[h]ow [defendants]…had a fiduciary duty to put [plaintiff's]...interests above the interests of [defendants]…"  Platinum-Beechwood, supra, at 116:

- R¶34- Agent owes a fiduciary duty of undivided loyalty to its principal (also found in Plaintiff's Standards of Business Conduct ("SBC") (ECF 275-3);

- R¶¶35-36- Real Estate Board of New York ("REBNY") Code of Ethics ("REBNY Code of Ethics and Professional Practices") (Ex.19-Ex.20 to R.) discusses the duties and ethical standards owed by a broker representing a tenant;

- R¶37- Plaintiff's SBC sets forth the scope of the fiduciary duties owed by Plaintiff to its clients;

- R¶38- Plaintiff's Managing Conflicts of Interest ("MCI") (ECF 275-2) discusses how Plaintiff's brokers should approach conflicts of interest in light of Plaintiff's fiduciary duties owed to its clients;

- R¶39- Upon receiving LW's first email mentioning Defendants and requesting comps and Chelsea market information, "Siegel should have immediately informed [Defendants], in writing, along with his manager Kleinberg…;"

- R¶40- "The ethical standard for Siegel was to respond to [LW's] request by saying, e.g., 'Lisa, I am representing [Defendants] in [their] space search and cannot provide you with any market information without my client's consent.  I will consult my client and get back to you;'" and

- R¶52- Plaintiff's MCI requires Plaintiff's brokers "to seek guidance from managers, human resources, compliance or legal if they have an issue regarding conflicts of interest and/or breaches of fiduciary duty."

(2) "…[W]hat the defendants here did instead."  Platinum-Beechwood, supra, at 116:

- R¶¶15, 45- Siegel emailed Confidential Information to LW without Defendants' prior consent or disclosing that Plaintiff was Defendants' exclusive broker;

- R¶16- Siegel failed to disclose to Defendants his contact and communications with and provision of comps and a CoStar Report to LW;

- R¶41- Siegel had at least 11 opportunities in October 2014 to make necessary disclosures to Defendants and Weinberg, to seek written permission from Defendants and to seek advice from Siegel's manager or Plaintiff's legal department; and

- R¶47- "[Plaintiff] put [Defendants] in a weakened negotiating position with Weinberg by informing Weinberg as to [Defendants'] limited options available in the neighborhood."

The foregoing expert opinions or fact recitations regarding industry custom and practice prove that Reingold's testimony concerns much more than the mere "legal conclusion that [Plaintiff] breached its fiduciary duty to [Defendants]" (PM, p.14).

Reingold may opine concerning industry custom and practice and that Plaintiff acted outside of established guidelines or standards.  In In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 643 F.Supp.2d 482, 505 (S.D.N.Y. 2009), the Court held:

> "***She may opine that a defendant had access to information***, but she may not opine that the defendant knew that information or that the information was *sufficient for* or *material* to a legal purpose.  ***She may opine that a defendant acted outside of established guidelines***, but she may not opine that the defendant acted *negligently* or *recklessly* acted *negligently* or *recklessly.*  The crucial distinction is that an expert may not draw the final inference between relevant evidence and the ultimate conclusion the jury will be asked to make."  Id. (emphasis supplied).

In Beede, supra, at *25, the court held:

> "…[A]ny qualified expert…may provide an opinion on whether a party's conduct or actions meet underlying bases for an ultimate issue in a case (by, for example, testifying whether certain acts would in the abstract be improper and/or inconsistent with a party's legal duties)…" (emphasis supplied).

In Beede, supra, the court denied plaintiffs' motion to exclude the testimony of defendants' expert (instead ordering the redaction of certain impermissible legal conclusions), holding that the expert's report "provides contextual information on common customs and practices in the securities industry during the relevant period," which "may prove helpful to the jury in unpacking the intricacies of this complex litigation."  Id.[3]

---

[3] See also Hewitt v. Metro-North Commuter Railroad, 244 F.Supp.3d 379, 394 (S.D.N.Y. 2017) (holding that an expert could not testify that defendant was "negligent," but could testify concerning the steps that a reasonable employer could have taken to mitigate certain risk factors and whether defendant actually took those steps).

An expert may base her testimony concerning industry custom and practice on what she has witnessed during her career.  In Mahoney v. JJ Weiser and Co., Inc., 2007 WL 3143710, at *9 (S.D.N.Y. Oct. 25, 2007), the court denied defendants' motion to strike plaintiff's expert because the expert "was not testifying as to his personal belief" about what the subject policy's claim-loss ratio should have been, but instead was testifying that the subject policy was an outlier based on claim-loss ratios that the expert "had routinely seen with respect to other, similar policies."  The expert "did identify the industry standards on which he relied and did identify the bases for his beliefs as to those standards."  Id.  The court further held that even where the expert testified without citing "corroborating empirical evidence," his opinions were reliable insofar as the expert relied on his experience viewing premiums refunded on hundreds of occasions and was familiar with the duties of third-party administrators such as defendant.  Id.

Reingold also may testify about background factual information where such testimony "will synthesize and summarize evidence in a manner that 'streamline[s] the presentation of [evidence] to the jury, saving the jury time and avoiding unnecessary confusion.'"  Platinum-Beechwood, supra, at 118 (internal citation omitted).  In Platinum-Beechwood, supra, such background factual information included "matters such as the relevant companies, their structures, and the rights and obligations related to those companies."  Id.  Factual testimony is not deemed impermissible factual narration where it is "relevant to laying a foundation for [the] expert testimony" because "an expert may lay a factual foundation for his or her opinion."  Id.

Reingold's expert testimony is admissible because it provides the ***lay juror*** with a better understanding of evidence outside its knowledge, which permits the juror to form ultimate determinations.  See U.S. Environmental, supra, at *4 ("…[T]he conclusions [the expert] arrives at from analyzing the trading records, depositions and other documents are not ones upon which

8

a lay person could readily hypothesize.  These conclusions will likely prove helpful in allowing

the trier of fact to understand the evidence better and providing the trier of fact with the

necessary tools to make an ultimate determination about whether or not [defendants] used a

scheme to defraud investors"); see also American Home Assur. Co. v. Masters' Ships Mgmt.

S.A., 2005 WL 159592, at *1 (S.D.N.Y. Jan. 25, 2005) ("…[I]n absence of any evidence that

Blue Water Hull & Machinery Insurance Underwriting 101 is now required learning in the

nation's schools, [the expert's] testimony surely does not fall within the ordinary ken and

common sense of the average factfinder").  In Roniger v. McCall, 2000 WL 1191078, at *5

(S.D.N.Y. Aug. 22, 2000), the Court held that although an expert could not testify that plaintiff's

job search was "reasonable," "active and proper," "vigorous" or "serious," the expert could

testify about plaintiff's job search "based on his own experience as a job consultant or other

proper basis" and opine on matters "outside the knowledge of a layperson."  Id.

      Reingold's expert testimony concerning the meaning of specialized subjects like comps

and CoStar reports will greatly assist the jury.  Sullivan v. Ford Motor Co., 2000 WL 343777, at

*7 (S.D.N.Y. Mar. 31, 2000) ("Even in the event that an expert's opinion as to an ultimate issue

is inadmiss[i]ble, the expert may still testify as to his or her specialized knowledge because such

knowledge may assist the trier of fact in other ways…An expert on the stand may give a

dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of

fact to apply them to the facts").  Reingold's specialized subject testimony includes, inter alia:

- R¶¶42-43,48 - To understand that LW's use of the term "our future development"
  in her 10/9/14 email to Siegel referred to Defendants, one must understand that
  Weinberg had a single property under future development at the time and that
  Weinberg was not in the business of developing the buildings he owned;

- R¶46- Comps are proprietary, non-public data not readily available to an owner;

- R¶47- A CoStar Report lets brokers and landlords view comparable commercial rent prices for commercial buildings in the neighborhood of the landlord's property and provides a landlord with information about tenants' other options to lease vacant space in that neighborhood; and

- R¶49- An owner with no CoStar license would have to identify every potential property and its owner and attempt to individually reach each owner or agent.

Even where an expert is found to have impermissibly offered legal conclusions, courts will not entirely preclude that expert's testimony where the expert also rendered permissible opinions.  See Olutosin v. Gunsett, 2019 WL 5616889, at *7 (S.D.N.Y. Oct. 31, 2019) ("…[T]he Court shall preliminarily DENY Plaintiff's motion to the extent it requests complete preclusion. Plaintiff may re-raise his objections on this issue at the appropriate time during trial if Defendants are unable to lay the proper foundation for admissibility of Dr. Mazarin's testimony); see also Golden, supra, at *13 ("Courts in this Circuit also recognize that it may be appropriate to admit some portions of an expert's testimony, and to exclude others, on a general subject matter that touches on legal standards and how they apply in a particular context…[T]he Court may strike or disregard portions of expert testimony that state legal opinions and conclusions, and consider other, permissible, expressions of expert opinion that do not cross that line.  ***That is, the question of whether to strike or disregard Mr. Kantrowitz's expert report is not a matter of 'all or nothing'***") (emphasis supplied); Cates v. Trustees of Columbia Univ. in City of New York, 2019 WL 8955333, at *12 (S.D.N.Y. Oct. 25, 2019).[4]

Plaintiff's cases are inapposite.  In U.S. v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) (PM, pp.13-15), the court held that the lower court did not abuse its discretion in ***admitting certain expert testimony*** because, inter alia, in a complicated case, "expert testimony may help a

---

[4] In re Namenda Direct Purchaser Antitrust Litig., 331 F.Supp.3d 152, 184 (S.D.N.Y. 2018); Levy v. Bessmer Trust Co., N.A., 2000 WL 1300402, at *2 (S.D.N.Y. Sept. 14, 2000).

jury understand unfamiliar terms and concepts."  The court held that "testimony concerning ***the***

***ordinary practices*** in the securities industry may be received ***to enable the jury to evaluate a***

***defendant's conduct against the standards of accepted practice***…"  Id. at 1295 (emphasis

supplied).  In In re Rezulin Products Liab. Litig., 309 F.Supp.2d 531, 557-58 (S.D.N.Y. 2004)

(PM, p.15), citing Bilzerian, supra, the expert failed to set forth the standards of conduct within

the medical community and instead presented "at best thinly-disguised legal or quasi-legal

principles," i.e., the expert's claimed "principle of self-determination" was "nothing but a

formulation of the doctrine of informed consent."  In stark contrast, in opining concerning the

relevant industry standards, Reingold relied not on a recitation of the law, but rather on

Plaintiff's own internal documents (SBC and MCI) (ECF 275-3 and 275-2) and Reingold's vast

experience as a real estate broker and manager, including working at CBRE (2003-2005).[5]

In SLSJ, LLC v. Kleban, 277 F.Supp.3d 258, 277, 282-87 (D.Conn., 2017) (PM, pp.14-

16), the court admitted, inter alia, the meaning of the terms "freeze out"/"squeeze out" as they

relate to breaches of fiduciary duties, "how the interests of an active and a passive investor may

diverge and even conflict," the "ordinary and customary business behavior for [active]

investors...to disclose and manage...conflicts," "the economic nature and function of the

---

[5] Cameron v. City of New York, 598 F.3d 50, 62, 65 (2d Cir. 2010) (PM, p.13), a malicious prosecution action, concerned ***lay (not expert) witness testimony*** from prosecutors concerning their ***legal and "irrelevant" determination*** as to whether probable cause existed for an arrest. There was ***no expert witness discussion of industry custom and practice or standards of conduct***—only an impermissible legal conclusion.  In U.S. v. Bronston, 658 F.2d 920, 930 (2d Cir. 1981) (PM, pp.13-14), expert testimony concerning "the ethical propriety" of defendant's conduct was inadmissible where the expert testimony was offered by "a member of [defendant's] own law firm…[and so] could hardly be labelled impartial."  The court further held that the expert's "testimony would in substance have conveyed nothing more to the jury than his 'general belief as to how the case should be decided'" (Id.), which is a far cry from Reingold's expert testimony concerning specialized real estate principles and terminology, industry custom and practice, how Plaintiff was required to perform pursuant to its fiduciary duties and industry standards, and the actions actually taken by Plaintiff at bar.

fiduciary duties owed by managing members of LLCs…," "the customary good faith of active investors in disclosing information to passive investors," "norms in the world of business," "the nature and 'purpose of fiduciary duties…,'" "the general fiduciary duties of managers of LLCs…" and the "fiduciary obligation in circumstances that present...a *principal-agent* or *agency problem*" (emphasis in original).  The court allowed the expert to "describe an agent's fiduciary duty of loyalty toward the principals/investors in a business relationship, discussing such concepts as self-dealing and full and fair disclosure."  Id., at 286.

**B.      Reingold's Expert Opinions Concerning Fiduciary Duties and Conflicts of Interest Are Not Impermissible Attorney Argument**

Plaintiff's argument that Reingold's expert opinions constitute impermissible attorney argument (PM, pp.16-17), in addition to being a rehash of Plaintiff's legal conclusions argument, is constructed on the indisputably false premise that an expert cannot testify about fiduciary duties or any subjects that may result in a legal conclusion.  As discussed on pp.3-4, supra, an expert can opine concerning "the elements of [a] legal conclusion."  McBeth, supra, at *6; see also Golden, supra, at *14; Platinum-Beechwood, supra, at 116.[6]

Plaintiff's contention that Reingold conflates "breach of fiduciary duty" and "conflict of interest" (PM, pp.15-16) is a red herring.  In fact, fiduciary duties and conflicts of interest are interconnected concepts and failure to disclose a conflict of interest constitutes a breach of fiduciary duties.  See Aquino by Convergent Distributors of Texas, LLC v. Alexander Capital, LP, 632 B.R. 7, 33 (S.D.N.Y. 2021) ("…[T]he Court finds that [plaintiff] has adequately alleged

---

[6] Choi v. Tower Research Capital LLC, 2 F.4th 10, 20 (2d Cir. 2021) (PM, p.16) is inapposite. The expert's report cited "several cases" (and ***third-party*** documents) also cited in plaintiffs' legal memorandum and "much of [the expert's] report advance[d] policy arguments."  Reingold cited no cases, relied in part on ***Plaintiff's own documents published on its website*** and focused on industry custom and practice and standards of conduct, not policy arguments.

that [defendant] breached its fiduciary duties by…concealing Mooney's conflicts of interest and divided loyalties…"); <u>see also</u> Plaintiff's SBC (ECF 275-3, pp.18-19) ("Owing a fiduciary obligation to someone requires us to place that person's interests above our own, to act with due care, ***to disclose conflicts of interest*** and to make our decisions in that person's interests") (emphasis supplied).  Reingold testified that a real estate broker's failure to disclose a conflict of interest to its client and obtain a written waiver constitutes a breach of fiduciary duties (Ex.16, 217:9-218:4) and that a broker's intentions or desire to act in the best interest of its client is irrelevant to determining whether a conflict of interest exists (<u>Id.</u>, 220:4-12; 220:21-23).

      Plaintiff misleadingly cites decontextualized deposition testimony in a futile attempt to support its false contentions that "Reingold even *admitted* that her fiduciary duty opinions required legal conclusions" (PM, p.15, emphasis in original) and that "Reingold's discussion of fiduciary duties and conflicts of interest is a thinly disguised legal brief" (PM, p.16).  In the cited deposition testimony, Plaintiff's counsel expressly asked Reingold ***for a legal conclusion*** (i.e., whether opining that a breach of fiduciary duty occurred "***under New York law***" given "a certain set of facts" requires a legal conclusion) (Ex. 16,151:16-22) (emphasis supplied).  Reingold ***never*** testified that she needed to render legal conclusions to opine concerning industry custom and practice or standards relating to fiduciary duties and conflicts of interest.

      Plaintiff incorrectly cites Ex.16, 133:8-18 for the proposition that Reingold's testimony was premised on her legal understanding of New York fiduciary duties law (PM, p.17).  That deposition excerpt states no such thing.  Reingold merely confirmed that she "believe[s] that [she] understand[s] the laws of the State of New York as to the definition of fiduciary duty, as to what fiduciary duty is" (Ex.16, 133:13-18).  Reingold testified that in determining whether fiduciary duties were breached, one must consider "the company's own regulations, the rules for

brokers" as "there's more to a breach than the New York law" (Id., 134:3-13).  Asked whether

she was testifying as to "what a breach of fiduciary duty is…as a matter of law," Reingold

responded, "As it relates to brokerage and its customs and practices" (Id., 157:18-158:2).

**C.**     **Reingold's Expert Opinions About Conflicts of Interest Are Reliable and Helpful**

        Plaintiff's contention that Reingold "fails to connect her experiences with conflicts of

interest to her opinions" (PM, p.17) is baseless.  In her Report (ECF 279-1), Reingold set forth

that her fiduciary duties/conflicts of interest opinions were based on, inter alia, Reingold's:

  (i)     "…[M]anagement of real estate commercial office brokerage professionals,
          particularly dispute resolution and professional ethics training, monitoring and
          enforcement" over the course of her nearly 50-year career (R¶1);

  (ii)    "…[C]onduct[ing] regular training sessions for brokerage professionals stressing
          the ethical obligations of real estate brokers" with an emphasis on "the duty of
          undivided loyalty" at several real estate brokerages and as an independent
          consultant (R¶51); and

  (iii)   Appointment at Cushman & Wakefield ("C&W") as the Conflict of Interest
          Officer with respect to a major tenant pursuant to which she ensured "that internal
          procedures were in place to protect against any breach of fiduciary duty" and
          conducted yearly broker training with respect to conflicts of interest (Id.).

Reingold applied the knowledge gained from her experiences during her 50-year career in the

real estate industry, including working at CBRE (2003-2005) (Ex. 20, p.1-"CB Richard Ellis" in

Ex.20 is "CBRE") in "supervising [brokers'] work, making sure that what they did was

appropriate, answering their questions…[and] helping them on their transactions…" (Ex.16,

141:11-24).  As the Conflict of Interest Officer at C&W, where Reingold was employed between

2005 and 2014, Reingold instituted, supervised and reviewed all documents concerning the

annual training of brokers on potential conflicts of interest (Id., 143:13-19; 144:17-23).

        Reingold was not required to "share any anecdotes" or append "training materials" to her

Report (PM, p.17), especially after explaining the source of her ironclad professional experience

in teaching and managing brokers concerning fiduciary duties and conflicts of interest. See U.S. Environmental, supra, at *4 ("Since the conclusions which [the expert] arrives at are based on his analysis of the trading records and other documents provided to him, and the process of comparing the information contained therein with his knowledge of the standard practices of the securities industry, the reliability of his testimony can be sufficiently evaluated by inquiring into [his] thirty years of experience as a regulator, compliance director, and securities consultant…"); see also Berk v. Bates Advertising USA, Inc., 1998 WL 726030, *3 (S.D.N.Y. Oct. 14, 1998) (permitting expert testimony concerning whether plaintiff exercised reasonable efforts to find employment in the advertising industry "[b]ased on [the expert's] experience in the advertising industry and [her] review of the credentials of [plaintiff]" given that plaintiff worked on 151 assignments during the relevant period in the advertising industry); Beede, supra, at *21 (holding that an expert permissibly opined concerning when, "in his experience," a professional fiduciary is normally advised of a contingent corporate event because the expert explained that he provided fiduciary services in "dozens of" similar situations); McBeth, supra, at *7 (permitting an expert to testify concerning customary due diligence because "there is 'some explanation as to how the expert came to his conclusion'" and "the 'lack of textual authority for his opinion [also] go[es] to the weight, not the admissibility, of his testimony'") (internal citations omitted).

Plaintiff's contention that experts cannot testify about conflicts of interest because they are "well within a lay juror's understanding…" (PM, p.18) is outrageous. As discussed on pp.11-12, supra, Kleban (at 284-85, 290, fn29)—a case cited by Plaintiff—stands for the proposition that an expert may testify about conflicts of interest and fiduciary duties.[7]   Plaintiff's

---

[7] Coquina Invs. v. Rothstein, 2011 WL 4949191, *3 (S.D.Fla. Oct. 18, 2011) (PM, p.18) is inapposite as the court held that defendant's expert could not testify as to ***plaintiff's expert's***

REBNY Code of Ethics argument (PM, p.18) is meritless.  Plaintiff cannot erase the ethical

standards promulgated by REBNY (Ex. 19-Ex. 20 to R.)—the industry representative of owners,

brokers and other real estate professionals in New York—especially in light of the deposition

testimony of Plaintiff's 30(b)(6) witness, Kim Brennan ("Brennan"), that Plaintiff and Siegel are

bound by the REBNY Code of Ethics (Ex.18, 15:22-16:2; 134:12-14; 134:19-20; 135:4-9).  As

Reingold spent decades managing brokers and training them with respect to their ethical

obligations (derived in part from REBNY), she must be permitted to testify concerning the full

scope of those ethical obligations.[8]

Plaintiff has no basis to attack Reingold's testimony concerning Plaintiff's MCI (PM,

pp.18-19).  Scentsational Technologies, LLC v. Pepsi, Inc., 2018 WL 1889763, at *5 (S.D.N.Y.

Apr. 18, 2018) is inapposite.  Although the expert's areas of expertise were ***scientific in nature***

(i.e., material science dynamics, encapsulation technologies and olfaction), she sought to testify

about ***defendant-specific corporate matters*** (i.e., defendant's information-sharing and research

and development process).  At bar, Reingold's expertise concerning fiduciary duties and

---

***potential conflict of interest*** (he was formerly employed as plaintiff's auditor), which had no
connection whatsoever to the heart of the litigation (bank fraud and Ponzi schemes).

[8] Primavera Familienstifung v. Askin, 130 F.Supp.2d 450, 529 (S.D.N.Y. 2001) (PM, p.18) is
readily distinguishable.  The expert vaguely testified that "brokers and dealers are expected to act
with the highest integrity" without "articulat[ing] industry customs or standards" or citing any
industry publication codifying or explicating this purported "integrity" standard.  In stark
contrast, Reingold testified concerning a host of industry customs and standards (see pp.5-6,
supra) based on her 50 years of industry experience, Plaintiff's SBC and MCI and the REBNY
Code of Ethics.  As the court recognized in Primavera, supra, at 529, "it is proper for an expert to
testify as to the customs and standards of an industry, and to opine as to how a party's conduct
measured up against such standards."  Rezulin, supra, at 543 (PM, p.18) is also inapplicable as
the experts therein testified that research sponsors "should be honest," which the court deemed
"vague."  As in Primavera, the experts opined using vague language ***of their own creation***,
which the court deemed unhelpful to the jury.  In stark contrast, Reingold testified concerning
industry standards derived in part from the REBNY Code of Ethics to which Plaintiff is bound.

conflicts of interest in the real estate industry—based in part on her employment by CBRE (2003-2005; Ex. 20, p.1 "CB Richard Ellis" in Ex. 20 is CBRE)—qualifies her to opine concerning Plaintiff's discussion of fiduciary duties and conflicts of interest in the MCI.  LaSalle Bank Nat. Ass'n v. CIBC Inc., 2012 WL 466785, at *3, 17 (S.D.N.Y. Feb. 14, 2012) (p.19) is also utterly irrelevant.  Seeking to neutralize certain damaging statements made in their own underwriting standards manual, defendant engaged an expert in commercial real estate financing to testify that defendant's manual "does not establish inflexible rules" and "is not meant to be a manual of ironclad rules requiring absolute adherence."  Id.  The court excluded the expert testimony, holding that regardless of the expert's specialized knowledge ***concerning the underwriting standards*** contained in the manual, the expert had no knowledge whatsoever about ***whether defendant considered the manual itself to be ironclad or flexible*.  *The court further held that defendant's expert "contradicts [defendant's] own documents with no basis given for [the expert's] opinion"*** (Id., at *3) (emphasis supplied).  At bar, it is Michaels' (not Reingold's) testimony that contradicts Plaintiff's MCI and SBC (ECF 275-3 and 275-2).

## POINT II
## REINGOLD'S EXPERT OPINIONS CONCERNING DAMAGES SET FORTH IN REINGOLD'S DECLARATION ARE ADMISSIBLE

A.    **Reingold's Expert Opinions Concerning Damages in Reingold's Declaration Are Not Speculative and Conclusory**

Plaintiff's conclusory contention that Reingold's damages opinions are based on faulty assumptions (PM, pp.5-6) is premised on blatant mischaracterizations with no legal or factual support.  Plaintiff's nonsensical argument that "[t]here is no evidence that Siegel advised Pace to seek a 3% annual increase, much less that Pace relied on this advice" (PM, p.6) is ***directly contradicted by Siegel***.  Siegel's Declaration (ECF 202, ¶22; ECF 279-9) states:

"My contribution to the Pace/Weinberg negotiations resulted in significant financial saving to Pace.  For example, Harnden told me that Weinberg had initially proposed a 5 percent escalation and I told him that was way too high.  I am advised that the June 2015 Lease provides for a 3 percent rent escalation ***_and I think it fair to say that my advice was instrumental in achieving that reduction_***" (emphasis supplied).

The Advisory Committee Notes to FRE 702 provide that courts should consider that "experience in conjunction with other knowledge, skill, training or education…[may] provide a sufficient foundation for expert testimony" and "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").

Plaintiff's unfounded assertion that Reingold has no experience in commercial leasing (PM, pp.7-8) is a concession that Plaintiff failed to read Reingold's background.[9]  Reingold's 50 years of industry experience ipso facto qualifies her as an expert pursuant to FRE 702.[10]  From 2013 to 2014, Reingold was COO of CW's Tri-State Region office (Exs. 20-21).  From 2005 to 2014, Reingold was Market Leader of CW's New York City Offices (reporting to CW's COO) and was responsible for brokerage operations in New York City, New Jersey, Westchester, Fairfield County and Long Island and for overseeing 300 CW brokerage professionals (Id.) (Exs. 20-21).  From 1998 to 2005, Reingold was Senior Managing Director of Insignia/ESG's New York Tri-State Region offices and U.S. Brokerage and was responsible for managing New York

---

[9] Plaintiff asserts that "Reingold has never testified as an expert in federal court" (PM, p.2), ignoring that Reingold was retained as an expert on "[f]ive or six" occasions (Ex.16, 71:2-72:3).

[10] Virtually all of Plaintiff's arguments regarding Reingold's purported gaps in reasoning or incorrect conclusions "go to the weight of the evidence, not to its admissibility."  Campbell v. Metropolitan Prop. and Cas. Ins. Co., 239 F.3d 179, 186 (2d Cir. 2001).  Disputes regarding the strength of an expert's credentials, her use or application of her methodology or the existence or number of supporting authorities for her opinions go to the weight, not the admissibility, of her testimony.  See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995).

City brokerage operations, supervising over 200 real estate professionals, training and business development.  ***In 2003, Plaintiff acquired Insignia/ESG*** (Id.- Ex. 20, p.1).  See Ex.21 concerning Reingold's professional experience from 1971 through 1998.  Reingold lectured at New York University's Real Estate Institute for over 10 years concerning the "lease document" and "different clauses of the lease, explaining them to the brokers" (Id., Ex. 16 290:13-23; 290-293).  Reingold is experienced in different methodologies of calculating commissions (Id., 25:19-27:19).

Reingold's damages opinions are derived from the undisputed data contained in the subject leases and from Siegel's alleged advice to reject a 5% escalation and instead seek a 3% escalation.  In Raishevich v. Foster, 247 F.3d 337, 342-343 (2d Cir. 2001), the court cited the "Bigelow[11] principle," holding that where defendants' wrongdoing prevents plaintiff from proving the ***exact amount of damages***, plaintiff is entitled to prove its damages based upon a just and reasonable estimate from relevant data.  The court further held, "Although [plaintiff] bore the burden of persuasion with regard to his entitlement to compensatory relief, he had no obligation to offer a mathematically precise formula as to the amount of damages."  Id.

The Bigelow principle provides a wronged party with "the benefit of a more liberalized standard of proof and prevents the [wrongdoer] from 'profit[ing] by his wrongdoing at the expense of his victim.'"  Id., 343; see also MEI Int'l, Inc. v. Schenkers Int'l Forwarders, Inc., 807 F.Supp. 979, 988-89 (S.D.N.Y. 1992) (plaintiff's agent permissibly and capably calculated damages "based on his relevant business experience and his experience with the various FILA transactions…" by "taking the average customs duty he paid on the first two lots, 15–18%, and

---

[11] Bigelow v. R.KO Radio Pictures, Inc., 327 U.S. 251, 264 (1946).

choosing the higher 18% duty for his calculation of what the duties would be on reimportation of the export lot" and adding "a fairly generous approximation" of transport costs).[12]

Where the jury finds that a party was damaged, but is unsure of the exact amount of damages, the jury must award damages to remedy the wrong done.  See Bigelow, supra, at 265-66 ("Difficulty of ascertainment is no longer confused with right of recovery for a proven invasion of the plaintiff's rights"); see also Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 496 (2d Cir. 1995); Process Am., Inc. v. Cynergy Holdings, LLC, 839 F.3d 125, 141 (2d Cir. 2016) ("…[A] plaintiff need only show a stable foundation for a reasonable estimate of the damages incurred as a result of the breach.  ***At that point, the burden of any uncertainty as to the amount of damages is on the breaching party***") (internal citations omitted) (emphasis added).

Plaintiff's attacks on Reingold's results, conclusions, assumptions and credibility are not a proper basis for exclusion as they concern the weight of the evidence, not its admissibility.  See Wechsler v. Hunt Health Sys., Ltd., 381 F.Supp.2d 135, 145 (S.D.N.Y. 2003) ("The trier of fact will determine the extent to which [the expert's] analysis should be relied upon"); see also Daubert, supra, at 595; Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 214 (2d Cir. 2009); Boucher v. US. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996).

**B.**      **Reingold's Expert Opinions Concerning Damages in Reingold's Declaration Are Not Untimely**

In opposition to Defendants' summary judgment motion, dated May 26, 2020 (ECF 186-87), Plaintiff e-filed Siegel's Declaration on July 16, 2020 (ECF 202), arguing (Id., ¶22):

---

[12] Venture Tech., Inc. v Nat'l Fuel Gas Co., 1981 WL 2013, *16 (W.D.N.Y. Jan. 9, 1981), rev'd on other grounds, 685 F.2d 41 (2d. Cir. 1982), holding:

> "This use of less-than-certain proof has been permitted simply because any alternative would allow a wrongdoer to profit from his wrong…As long as there is some evidentiary basis for an estimate of the lost profit, such an estimate may not be excluded."

"My contribution to the Pace/Weinberg negotiations resulted in significant financial saving to [Defendants].  For example, Harnden told me that Weinberg had initially proposed a 5 percent escalation and I told him that was way too high.  I am advised that the June 2015 Lease provides for a 3 percent rent escalation and I think it fair to say that my advice was instrumental in achieving that reduction.  The savings to Pace resulting from that reduction alone, over the twenty year term, comes to over $50 million dollars."

Pursuant to the So Ordered briefing schedule, Reingold's Declaration (in opposition to Siegel's Declaration) was timely e-filed 29 days later on August 14, 2020 (ECF 212).[13] Reingold's Declaration argued that "[b]ased on Siegel's Declaration, he performed a gross disservice to Defendants" (ECF 212, ¶7).  Reingold opined (Id., ¶¶7-9) that Siegel's faulty calculations (and Reingold's correct calculations) actually "underscore[] my statements in the [Reingold] Expert Report (Ex. 57 ¶ 57) and [the Reingold] Expert Rebuttal Report (Ex. 70 ¶ 12)" concerning the scope of the advice and guidance that Plaintiff was required to provide and Defendants' Second Counterclaim for breach of contract.  As this Court recently ruled on October 27, 2022 (ECF 281, p.6), the Court's earlier order "does not foreclose defendant from arguing that plaintiff failed to perform other obligations that may be due under the agreement."

The non-exclusive four factor analysis in Point Prods. A. G. v. Sony Music Entmt., Inc., 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) (PM, p.9), derived from Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006),[14] is **_not required_** when the court determines that a purported disclosure deficit was harmless or substantially justified.  See FRCP 37(c)(1); see also

---

[13] Defendants did not fail to comply with any expert disclosure requirement as Defendants had a right under FRCP 26(a)(2)(D)(ii) to rebut Siegel's Declaration.  FRCP Rule 26(a)(2)(D)(ii) provides that an expert disclosure "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)" must be made "within 30 days after the other party's disclosure."

[14] See Patterson, supra, at 117 ("(1) the party's explanation for the alleged failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."

Williams v. Morton, 343 F.3d 212, 222-23 (3d Cir. 2003).[15]  Plaintiff has **_not shown any_**

**_prejudice_** (i.e., Siegel's or Michael's unavailability or inability to prepare for trial).  After

Reingold's Declaration was filed, Plaintiff's counsel **_never_** moved to reopen discovery or

exclude Reingold's Declaration from consideration on summary judgment.  Plaintiff cannot now

facetiously claim to be surprised regarding a Declaration submitted in 2020.  At his September

24, 2019 deposition, Michaels was questioned at length concerning Defendants' Second

Counterclaim and Plaintiff's advisory services that should have been provided to Defendants in

light of Plaintiff's contractual duty to "**_facilitate and conduct all aspects_** of the space evaluation,

selection and negotiation process **_based upon our agreed strategy_**, and **_we will offer advice and_**

**_guidance as appropriate_**" (ECF 275-1, pp.221-240 and Exhibits H to L thereto; Ex.22, ¶2, ECF

157-1; Ex. 23, ¶B.1, ECF 157-2) (emphasis supplied).  Plaintiff concedes (PM, p.10) that Siegel

testified about rent escalations at his February 5, 2019 deposition.

      The statements made in Reingold's Declaration were not new.  Reingold specifically

referenced her Report (ECF 212, ¶9, referencing R¶57) and Rebuttal Report (ECF 212, ¶9,

referencing Rebuttal Report ¶12).[16]  As detailed in Defendants' Second Counterclaim for breach

of contract (ECF 163, ¶¶112-116), Plaintiff caused an increase in Defendants' yearly

compounded rental, tax and operating expenses by failing to engage Plaintiff's sophisticated

Advisory and Transaction Services department, including CBRE's Financial Consulting

department, to, inter alia, analyze the rent, tax and operating expenses escalation provisions and

---

[15] Arista Records LLC v. Lime Group LLC, 784 F. Supp. 2d 398, 417 (S.D.N.Y. 2011)
("…[B]ecause refusing to admit evidence that was not disclosed during discovery is a drastic
remedy, courts will resort to preclusion only in those rare cases where a party's conduct
represents flagrant bad faith and callous disregard of the [FRCP]"); Ward v. Nat'l Geog. Soc'y,
2002 WL 27777 (SDNY Jan. 11, 2002); Grdinich v. Bradlees, 187 F.R.D. 77, 79 (SDNY 1999).

[16] Expert Rebuttal Report of Suzy A. Reingold, dated August 14, 2019 (ECF 279-3).

other lease documents and provide advice concerning financial impacts (ECF 163 ¶¶113-116). Siegel, who concededly has no experience in ground-up construction, failed to recognize that the industry standard for rent increases over the term of a 20-year commercial lease usually is a fixed dollar amount (generally implemented at 5-year intervals) and would not exceed 1% annually for a 20-year lease.  The compounding of rent, tax and operating expenses at a yearly 3% rate increase in a 20-year lease is unheard of in the industry.

Even if the Court applied the four-factor <u>Patterson</u> test, Reingold's damages testimony should not be precluded.  With respect to the first and third factors, Plaintiff suffered no prejudice (<u>see</u> p.22, <u>supra</u>).  The second factor weighs strongly ***against preclusion***, considering the value of Reingold's testimony concerning Defendants' Second Counterclaim and Defendants' damages and that preclusion would be outcome-determinative.  Preclusion of evidence and testimony concerning damages is a drastic sanction amounting to a denial of access to justice and a windfall to the adversary.  <u>See</u> <u>World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.</u>, 694 F.3d 155, 159-60 (2d. Cir. 2012) (holding that dismissing plaintiff's damages claim was not an appropriate exercise of discretion, even assuming that plaintiff acted willfully in submitting a late expert report without first seeking the court's permission, because striking a damages request is a "harsh sanction, one akin to dismissing the action altogether"); <u>see</u> <u>also</u> <u>Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC</u>, 571 F.3d 206, 213 (2d Cir. 2009) (holding that the trial court abused its discretion in excluding an expert opinion where "the testimony of [the excluded expert] was critical to [defendant's] defense").  With respect to the fourth factor, although the possibility of a continuance may not be appropriate at this stage, at the time Reingold's Declaration was submitted in August 2020, a trial date had not been set and there was no Pre-Trial Order.  The <u>Patterson</u> factors overwhelmingly weigh ***against preclusion***.

As set forth on pp.2-12, supra, Reingold's expert testimony will be critical in helping the jury understand unfamiliar, complex terms and concepts and is permissible even where it embraces an ultimate issue to be decided by the jury, as long as those opinions do not "merely tell the jury what result to reach." Kleban, at 270; Bilzerian, at 1295. Plaintiff's cited excerpts from Reingold's Report and Rebuttal Report (PM, pp.5-13, 23) of allegedly impermissible opinions concerning Defendants' Second Counterclaim are a red herring. A complete reading of Reingold's testimony demonstrates that she will not offer legal conclusions concerning Defendants' Second Counterclaim, but instead will elucidate industry standards and custom and practice concerning the provision of advisory services to Plaintiff's clients, which services Plaintiff typically provides and which services Plaintiff failed to provide to Defendants.

Plaintiff's cases are inapplicable. In Caruso v Bon Secours Charity Health Sys., Inc., 703 Fed. Appx. 31, 33 (2d. Cir. 2017) (PM, p.10), the court rejected plaintiff's unconvincing excuse that she believed that no expert report was required because her experts were unpaid and not retained to provide expert testimony. The court further held that "these experts' proffered testimony was of *__minimal importance__*, and that *__any prejudice__* to [plaintiff] arising from its exclusion was *__likewise minimal__*." Id., at 34 (emphasis supplied). In Point Prods., supra (PM., p.9), plaintiff submitted five new expert affidavits/reports *__18 months after the discovery cutoff__* in response to defendants' in limine motion to exclude plaintiff's original expert report.

Plaintiff's contention (PM, pp.12-13) that ¶¶2-6 of Reingold's Declaration constitute impermissible narrative is wrong. Those paragraphs directly respond to Siegel's after-the-fact contrived arguments and set forth industry custom and practice (i.e., "Any responsible broker would have immediately contacted the client to create an agreed strategy (and coordinate with the client's own negotiations with the landlord) so that any information that the broker may

provide to the landlord—with the client's prior knowledge and consent—would further the client's interests") (ECF 279-4 and ECF 212, ¶3).  Reingold was entitled to discuss the REBNY Code of Ethics and the fiduciary duties and conflicts of interest principles in Plaintiff's SBC and MCI concerning communications with a counterparty.  See Platinum-Beechwood, supra, at 118 (holding that background factual information is permissible where such testimony "will synthesize and summarize evidence in a manner that 'streamline[s] the presentation of [evidence] to the jury, saving the jury time and avoiding unnecessary confusion'").

**POINT III**
**REINGOLD MUST BE PERMITTED TO TESTIFY CONCERNING THE TERM "FULL MARKET COMMISSION"**

Though the Court ruled that the March 18 Agreement was not unenforceable due to the indefiniteness of the term "full market commission" (ECF 215, pp.18-19), the Court made no ruling about what exactly constitutes a "full market commission" and how such a commission is calculated for the purposes of calculating alleged damages.  As this issue remains undecided and must be determined by the jury, Reingold must be permitted to testify thereto.

**CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that Plaintiff's motion be denied in full, together with such other and further relief as to this Court seems just and proper.

Dated:  New York, New York
        November 4, 2022

                               Respectfully submitted,
                               AARON RICHARD GOLUB, ESQUIRE, P.C.
                               Attorneys for Defendants

                                    s/Aaron Richard Golub
                          BY:    Aaron Richard Golub
Of Counsel:                             24 East 64th Street- Fifth Floor
    Aaron Richard Golub              New York, New York 10065
    Nehemiah S. Glanc               ph: (212) 838-4811
    Russell I. Zwerin                fx: (212) 838-4869

25
