UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X  Case No. 17-cv-02452 (ALC) (SN)
CBRE, INC.,

                              Plaintiff,

    -against-


THE PACE GALLERY OF NEW YORK, INC. AND
THE PACE GALLERY LLC, D/B/A PACE GALLERY,

                              Defendants.
-------------------------------------------------------------------X


# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
# MOTION *IN LIMINE*


AARON RICHARD GOLUB, ESQUIRE, P.C.
Attorneys for Defendants
24 East 64th Street- Fifth Floor
New York, New York 10065
ph: (212) 838-4811
fx: (212) 838-4869

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………….1

ARGUMENT……………………………………………………………………………….....2

    A.    Purported Evidence Allegedly Showing a Benefit to Defendants
Should Be Excluded as a Matter of Black Letter Law…………………………….2

    B.    Evidence or Argument Concerning the Purported Benefit to Defendants
Should Be Excluded Because It Is Prejudicial..……………………………………..7

    C.    Bifurcation Standard……………………….......................................................8

    D.    Bifurcation Will Reduce Juror Confusion…………………….........................9

    E.    Bifurcation Will Reduce Prejudice….................................................................11

    F.    Bifurcation Will Promote Judicial Economy And Efficiency …………………..13

CONCLUSION……………………………………………………………………………..14

# TABLE OF AUTHORITIES

Page(s)

Cases

Amato v. City of Saratoga Springs, N.Y.,
   170 F.3d 311 (2d Cir. 1999).....................................................................................................8
Appel v Fischbach Corp., Inc.,
   1998 WL 470497 (E.D.N.Y. Aug. 10, 1998)............................................................................4
Arlio v. Lively,
   474 F.3d 46 (2d Cir. 2007) .......................................................................................................7
Buscemi v. Pepsico, Inc.,
   736 F.Supp. 1267 (S.D.N.Y. 1990)................................................................................. 11, 12
Chamilco v Wild Edibles, Inc.,
   2017 WL 11567936 (S.D.N.Y. Dec. 1, 2017) .........................................................................2
City of Binghamton v. Whalen,
   141 A.D.3d 145 (N.Y. App. Div. 2016) ..................................................................................4
Crown Cork & Seal Co., Inc. Master Retirement Trust v. Credit Suisse First Boston Corp.,
   288 F.R.D. 335 (S.D.N.Y. 2013) ...........................................................................................13
Dutton v. Willner,
   52 N.Y. 312 (1873)..................................................................................................................6
Evans v. Port Auth. of New York & New Jersey,
   192 F. Supp. 2d 247 (S.D.N.Y. 2002) .....................................................................................2
Feiger v. Iral Jewelry, Ltd.,
   41 N.Y.2d 928 (1977)......................................................................................................Passim
Gray v. Hoffman-La Roche, Inc.,
   82 Fed Appx 639 (10th Cir. 2003) ...........................................................................................7
Guidi v. Inter-Cont'l Hotels Corp.,
   2003 WL 1846864 (S.D.N.Y. Apr. 8, 2003) .........................................................................10
Henry v. Concord Limousine, Inc.,
   2014 WL 297303 (E.D.N.Y. Jan. 24, 2014) ........................................................................3, 4
Hopkins v. National Railroad Passenger Corp.,
   2016 WL 1588499 (E.D.N.Y. Apr. 19, 2016) ............................................................. 8, 9, 13
In re Master Key Antitrust Litig.,
   528 F.2d 5 (2d Cir. 1975) .......................................................................................... 8, 9, 12, 13
Johnson v. Summit Acquisitions, LLC,
   2019 WL 1427273 (N.D.N.Y. Mar. 29, 2019) ........................................................................3
Jones v. Dana,
   2006 WL 1153358 (S.D.N.Y. May 2, 2006) ...........................................................................3
Katsaros v. Cody,
   744 F.2d 270 (2d Cir. 1984)...................................................................................................10
Lagudi v. Long Island R. Co.,
   775 F.Supp. 73 (E.D.N.Y. 1991)..................................................................................... 10, 12
Masonic Med. Research Lab. v Antzelevitch,
   2017 WL 11676241 (N.D.N.Y. Mar. 23, 2017)......................................................................5

McDonnell Douglas Corp.,
    727 F.2d 202 (2d Cir. 1984)..................................................................................................2
Nnodimele v. Derienzo,
    2016 WL 3561708 (E.D.N.Y. June 27, 2016) ............................................................. 10, 12
Palmieri v. Defaria,
    88 F.3d 136 (2d Cir. 1996) ...................................................................................................2
Paulay v. John T. Mather Memorial Hospital,
    2016 WL 829992 (E.D.N.Y. Mar. 3, 2016)........................................................................13
Pawlowski v Kitchen Expressions Inc.,
    2017 WL 10259773 (E.D.N.Y. Dec. 15, 2017) ...................................................................4
Phansalkar v. Andersen Weinroth & Co., L.P.,
    344 F.3d 184 (2d. Cir. 2003).................................................................................................2
Renaissance Nutrition, Inc. v. Jarrett,
    2011 WL 3235642 (W.D.N.Y. July 27, 2011).....................................................................4
Shepard v. International Business Machines Corp.,
    45 F.R.D. 536 (S.D.N.Y. 1968) ............................................................................. 9, 13, 14
Soam Corp. v. Trane Co.,
    608 N.Y.S.2d 177 (1st Dep't 1994)...................................................................................3, 6
United States v. Beech-Nut Nutrition Corp.,
    871 F.2d 1181 (2d Cir. 1989)...............................................................................................8
United States v. Corr,
    543 F.2d 1042 (2d Cir. 1976)...............................................................................................2
United States v. Tokash,
    282 F.3d 962 (7th Cir. 2002) ...............................................................................................2
Webb v. Robert Lewis Rosen Assoc., Ltd.,
    2003 WL 23018792 (S.D.N.Y. Dec. 23, 2003) ...................................................................3
Wright v. Aargo Sec. Services, Inc.,
    2001 WL 1035139 (S.D.N.Y. Sept. 7, 2001).......................................................................8
Yukos Capital S.A.R.L. v. Feldman,
    977 F.3d. 216 (2d. Cir. 2020)............................................................................................2, 5

Rules

FRCP 42(b) ................................................................................................................................8, 9
FRE 104 .........................................................................................................................................2
FRE 401 .........................................................................................................................................6
FRE 402 ......................................................................................................................................6, 7
FRE 403 ......................................................................................................................................7, 8

Other Authorities

22A Fed. Prac. & Proc. Evid. § 5215 (2d ed.) ..........................................................................7, 8
*Restatement (Second) of Agency § 469 (1958)*............................................................................3

**PRELIMINARY STATEMENT**

Defendants submit this Memorandum of Law in support of their motion *in limine* to exclude certain purported evidence that they expect Plaintiff and its chief real estate broker in the subject transaction, Stuart Siegel ("Siegel"), will offer at the trial of this action, and to bifurcate the trial into a liability phase and a damages phase, tried before the same jury, with the damages phase to commence (if necessary) immediately after the jury reaches a verdict on liability. Bifurcation of the upcoming trial into separate liability and damages phases is critically necessary to reduce juror confusion, avoid prejudice and promote judicial economy and efficiency. With respect to juror confusion, evidence concerning liability (i.e., whether Defendants breached the subject agreements, whether Plaintiff was contractually required to perform certain advisory services for Defendants and the extent, scope and construction of the fiduciary duties owed by Plaintiff to Defendants) will be substantially distinct from evidence concerning damages (i.e., industry custom and practice concerning the undefined term "full market commission" and the ***financial effect on Defendants' ultimate lease terms*** of Plaintiff's breach of contract). With respect to prejudice, once the jury hears evidence of alleged harm to Plaintiff (before those jurors render a decision as to Defendants' liability), the jury will be sympathetic to Plaintiff because of its claimed injury rather than unbiasedly assessing whether or not Defendants actually caused the alleged harm. Bifurcation undoubtedly will promote judicial economy and efficiency as litigation of the liability issues might entirely eliminate the need to litigate the damages issues.

# ARGUMENT[1]

### A. Purported Evidence Allegedly Showing a Benefit to Defendants Should Be Excluded as a Matter of Black Letter Law

The law is crystal clear.  "One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary…***Nor does it make any difference that the services were beneficial to the principal, or that the principal suffered no provable damage*** as a result of the breach of fidelity by the agent…"  Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 928-929 (1977) (internal citations omitted) (emphasis supplied).  Feiger, supra, is a case that is universally cited for the principle that this defense of purported benefit is legally taboo.  See Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d. Cir. 2003);[2] Yukos Capital S.A.R.L. v.

---

[1] "The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks omitted); see also Chamilco v Wild Edibles, Inc., 2017 WL 11567936, at *1-2 (S.D.N.Y. Dec. 1, 2017); FRE 104.  *In limine* motions therefore serve the salutary goal of "streamlin[ing] trials and settl[ing] evidentiary disputes in advance."  United States v. Tokash, 282 F.3d 962, 968 (7th Cir. 2002).

The Court may rely on the Federal Rules of Evidence ("FRE") and its own broad discretion in determining whether or not to exclude certain evidence at trial.  See Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 207 (2d Cir. 1984); see also United States v. Corr, 543 F.2d 1042, 1051 (2d Cir. 1976).  The proponent of the evidence bears the burden of proving that it is admissible.  See Evans v. Port Auth. of New York & New Jersey, 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002) ("The burden of establishing admissibility, of course, is with the proponent of the evidence").

[2] Holding:
> "One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary [citing Feiger, supra]… ***It does not 'make any difference that the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent.'*** Feiger, 41 N.Y.2d at 928–29, 394 N.Y.S.2d 626, 363 N.E.2d 350" (emphasis supplied).

2

Feldman, 977 F.3d. 216, 241-42 (2d. Cir. 2020);[3] Webb v. Robert Lewis Rosen Assoc., Ltd., 2003 WL 23018792, at *6 (S.D.N.Y. Dec. 23, 2003), aff'd, 128 Fed. Appx. 793 (2d. Cir. 2005);[4] Jones v. Dana, 2006 WL 1153358, at *32 (S.D.N.Y. May 2, 2006);[5] Johnson v. Summit Acquisitions, LLC, 2019 WL 1427273, at *9 (N.D.N.Y. Mar. 29, 2019);[6] Henry v. Concord

---

[3] Holding:
> "The New York Court of Appeals has explained that a faithless servant 'is generally disentitled to recover his compensation,' ***even if 'the principal suffered no provable damage as a result of the breach of fidelity.***' Feiger, 41 N.Y.2d at 928–29, 394 N.Y.S.2d 626, 363 N.E.2d 350" (internal citations omitted) (emphasis supplied).

[4] Holding:
> "However, while a breach of fiduciary duty claim requires a showing of damages, an alternative agency principle, ***the faithless servant doctrine***, provides an additional mechanism for relief, notwithstanding that Webb suffered no damage. 'Under New York law, an agent is obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties…'***A 'principal is entitled to recover from his unfaithful agent any commission paid by the principal…' It is immaterial that 'the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent.' Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977), citing Restatement (Second) of Agency § 469 (1958).*** The doctrine ensures that a disloyal agent is not compensated even when the principle suffers no loss" (internal citations omitted) (emphasis supplied).

[5] Holding:
> "One who owes a fiduciary duty to a principal and who is faithless in the performance of her services forfeits any right to recover compensation, whether commissions or salary, ***regardless of whether the services were beneficial to the principal***. ***Soam Corp. v. Trane Co.***, 608 N.Y.S.2d 177, 178 (1st Dep't 1994) (determining that 'an agent is held to the utmost good faith in his dealings with his principal, and forfeits any right to compensation for his services if he acts adversely to his employer 'in any part of the transaction…'' ***It does not make any difference that the services were beneficial to the principal. See Feiger v. Iral Jewelry, Ltd.,*** 41 N.Y.2d 928, 928-29 (N.Y. 1977)" (internal citations omitted) (emphasis supplied).

[6] Holding:
> "Breach of duty of loyalty and violation of the faithless servant doctrine are essentially the same claims, except that under the faithless servant doctrine, the employer need not show that the employee caused damages…New York law with respect to disloyal or faithless performance of employment duties is grounded in the law of agency, and has

3

Limousine, Inc., 2014 WL 297303, at *4 (E.D.N.Y. Jan. 24, 2014);[7] Appel v Fischbach Corp., Inc., 93-CV-5146(FB), 1998 WL 470497, at *7 (E.D.N.Y. Aug. 10, 1998), aff'd, 189 F3d 460 (2d. Cir. 1999);[8] Pawlowski v Kitchen Expressions Inc., 2017 WL 10259773, at *2 (E.D.N.Y. Dec. 15, 2017);[9] Renaissance Nutrition, Inc. v. Jarrett, 2011 WL 3235642, at *9 (W.D.N.Y. July

---

    developed for well over a century…One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary for the period of disloyalty…***It does not 'make any difference that the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent.*** ' **Feiger, 363 N.E.2d at 351**" (internal citations omitted) (emphasis supplied).

[7] Holding:

    "New York law recognizes the 'faithless servant' doctrine…A faithless employee forfeits the right to compensation during the period of disloyalty ***even when 'the services were beneficial to the principal*** or [when] the principal suffered no provable damage as a result of the breach of fidelity by the agent.' Id. **(quoting *Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928, 929, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977)).** Thus, 'the act of being disloyal to one's employer is itself sufficient grounds for disgorging all compensation received during the period of liability, and does not depend on actual harm to the employer'" (internal citations omitted) (emphasis supplied).

[8] Holding:

    "*B. Conclusions of Law*

    …One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary...***Nor does it make any difference that the services were beneficial to the principal***, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent. *Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928, 928–29, 394 N.Y.S.2d 626, 626, 363 N.E.2d 350 (1977)" (emphasis supplied).

[9] Holding:

    "For over a century, New York's faithless servant doctrine has held that an employee who violates this duty of loyalty must account to his employer for 'secret profits' and must 'forfeit[ ] his right to compensation for services rendered by him.' Id. ***This is true even when 'some or all of the services were beneficial to the principal*** or [when] the principal suffered no provable damage as a result of the breach of fidelity by the agent.' *City of Binghamton v. Whalen*, 141 A.D.3d 145, 147 (N.Y. App. Div. 2016) (alteration in original) (***quoting Feiger v. Iral Jewelry, Ltd.***, 363 N.E.2d 350, 351 (N.Y. 1977)" (internal citations omitted) (emphasis supplied).

4

27, 2011);[10] Masonic Med. Research Lab. v Antzelevitch, 2017 WL 11676241, at *11 (N.D.N.Y. Mar. 23, 2017).[11]

In Yukos, supra, defendant Feldman (a director of several of plaintiffs' entities) was involved in various schemes. In one of three schemes, Feldman made an unauthorized investment, using funds from plaintiffs' entities, which ***had almost doubled in value. As a result, Plaintiffs did not seek compensatory damages from Feldman for his role in that scheme. At trial, the jury found Feldman liable for breach of fiduciary duty, notwithstanding that Feldman's breach of fiduciary duty allegedly benefitted plaintiffs.*** In a second scheme, Feldman approved a $2.6 million "finder's fee" payment concerning a certain bank, which was a disguised kickback to Feldman and which caused that bank to charge plaintiffs higher rates on certain foreign exchanges (damages were estimated at $3 million). ***Plaintiffs did not seek compensatory damages from Feldman for his role in the second scheme because, before trial, Plaintiffs had already settled with the bank for the full amount of their out-of-pocket harm. At***

---

[10] Holding:
"Defendants claim that Eastwood and Visser farms had their own reasons—apart from Kurtz—for using CBI instead of Renaissance…Therefore, they state, Kurtz could not have been disloyal because these farms did not represent lost opportunities for Plaintiff. ***But it does not 'make any difference that the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent.' Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 929, 394 N.Y.S.2d 626, 363 N.E.2d 350 (1977)***…" (emphasis supplied).

[11] Holding:
"Courts are clear that 'one who owes a duty of fidelity to a principal and who is faithless in the performance of his or her services is generally not entitled to recover compensation, whether commissions or salary…' ***That standard applies even if 'the services were beneficial to the principal***, or...the principal suffered no provable damage as a result of the breach of fidelity by the agent.' ***Feiger v. Iral Jewelry, Ltd.***, 41 N.Y.2d 928, 928-929, 394 N.Y.S.2d 626 (1977)" (internal citations omitted) (emphasis supplied).

***trial, the jury found Feldman liable for breach of fiduciary duty in the second scheme, notwithstanding that Feldman's breach of fiduciary duty ultimately did not harm plaintiffs.***

In Yukos, supra, the court explained the reasoning, as follows:

"Indeed, the New York Court of Appeals has said that a plaintiff may assert a claim for breach of fiduciary duty in the absence of any allegation of compensatory damages because the function of such an action, unlike an ordinary tort or contract case, is not merely to compensate the plaintiff for wrongs committed by the defendant but...to prevent them, by removing from agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others, or to which their agency or trust relates.

Diamond, 24 N.Y.2d at 498…(quoting Dutton v. Willner, 52 N.Y. 312, 319 (1873)) (cleaned up).  We have previously extrapolated from that articulation and explained that '[a]n action for breach of fiduciary duty is a prophylactic rule intended to remove all incentive to breach—not simply to compensate for damages in the event of a breach…'" Id., at 241-242.

See also Webb, supra at 6.

In opposition to Defendants' summary judgment motion, dated May 26, 2020 (ECF 186-87), Plaintiff e-filed Siegel's Declaration on July 16, 2020 (ECF 202), arguing, in part (Id., ¶22):

"22.    … ***I was at all times acting in Pace's best interest and attempting to advance Pace's position***.  I did not then believe, and I do not believe now, that I had any obligation to ask Pace (or Ms. Kleinberg) for prior approval ***because supplying the comps and CoStar was in Pace's best interest.***  Nor did I think then (nor do I think now) that any conflict of interest arose from the fact that Pace was negotiating with Sam Weinberg.  Quite to the contrary, ***the services I rendered to Pace, including the sharing of market information with Ms. Weinberg, helped Pace to make its deal with Wenat. My contribution to the Pace/Weinberg negotiations resulted in significant financial saving to Pace***" (emphasis supplied).

It is axiomatic that evidence is inadmissible unless it is relevant.  "Irrelevant evidence is not admissible."  FRE 402.  FRE 401 provides, in pertinent part, that evidence is relevant only if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  If a piece of evidence "does not tend to prove a material fact" that is "of consequence to the determination of the

6

action," it is "irrelevant" and inadmissible. See Arlio v. Lively, 474 F.3d 46, 52 (2d Cir. 2007); see also Blue Cross and Blue Shield of New Jersey, Inc. v Philip Morris, Inc., 138 F. Supp. 2d..357, 365-66 (E.D.N.Y. 2001);[12] Gray v. Hoffman-La Roche, Inc., 82 Fed Appx 639, 650-51 (10th Cir. 2003) excluding evidence concerning defendant's profit motive in products liability trial because "profit motive was 'not an issue,' and evidence relating to profit motive would be 'more prejudicial than probative'… [Defendant's] alleged motive for failing to issue a stronger warning is immaterial to any element of [Plaintiff's] three causes of action, and is therefore inconsequential to the determination of the case… The trial court acted within its discretion under Rule 402 in determining profit motive evidence bore no relevance to the issues posed to the jury."

Pursuant to Feiger, supra, and the referenced case law cited above (including the multitude of cases citing Feiger, supra), Siegel's testimony of alleged benefit to Defendants is irrelevant and prejudicial and not for the jury to consider.

**B.   Evidence or Argument Concerning the Purported Benefit to Defendants Should Be Excluded Because It Is Prejudicial**

Siegel's "benefit to Pace" testimony is "substantially outweighed by a danger of…unfair prejudice." FRE 403. "[T]he issue is whether the evidence is capable of being used as part of an

---

[12] Holding:
"If a proposition of fact is not required to be proved under the applicable rule of substantive law, and thus is not material, any evidence introduced solely to prove or disprove it, directly or indirectly, is irrelevant and inadmissible; an evidentiary proposition is considered 'relevant' only if it is logically related, either directly or through an inferential chain of proof, to at least one of the formal elements of the charges made or defenses raised in the case—e.g., a material proposition of fact…***'[U]ltimately the evidence must be assessed against the elements of the cause of action, crime, or defenses at issue in the trial…' Evidence has 'probative value' only if it has any tendency to establish or disestablish a legally necessary (material) proposition in the case through proof of the probability that the proposition is true (or untrue)***…" (internal citations omitted) (emphasis supplied).

7

illegitimate method of persuasion.  The method may be illegitimate either because it appeals to an inappropriate logic…or to an undesirable emotion…" 22A Fed. Prac. & Proc. Evid. § 5215 (2d ed.).[13]  Here, Siegel's alleged Declaration testimony does not illuminate the merits of this case, but instead appeals both to "inappropriate logic" and "undesirable emotion."  The jury may illogically conclude that because Siegel baselessly claims that the Counterparty Information e-mailed to Weinberg allegedly benefitted Defendants (which it did not) that Siegel did not violate the faithless servant doctrine or breach his fiduciary duties owed to Defendants.  Introducing or allowing Siegel's evidence poses an unacceptable risk of "confusing the issues, misleading the jury, [and] wasting time."  FRE 403; see also United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1193 (2d Cir. 1989) (affirming exclusion because of "the danger of confusing the jury").  Siegel's "benefit to Pace" testimony should be excluded based on the uncontroverted case law.

## C.     **Bifurcation Standard**

"…[B]ifurcated trials have frequently been employed with great success."  In re Master Key Antitrust Litig., 528 F.2d 5, 15 (2d Cir. 1975).  "The decision to bifurcate a trial into liability and damages phases...is firmly within the discretion of the trial court under [FRCP] 42(b)."  Wright v. Aargo Sec. Services, Inc., 2001 WL 1035139, at *6 (S.D.N.Y. Sept. 7, 2001); see also Hopkins v. National Railroad Passenger Corp., 2016 WL 1588499, at *1 (E.D.N.Y. Apr. 19, 2016).  FRCP 42(b) provides, "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  See also Amato v. City of Saratoga Springs,

---

[13] The Advisory Committee notes to FRE 403 define "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

8

N.Y., 170 F.3d 311, 316 (2d Cir. 1999) ("Rule 42(b) of the Federal Rules of Civil Procedure affords a trial court the discretion to order separate trials where such an order will further convenience, avoid prejudice, or promote efficiency").

### D. **Bifurcation Will Reduce Juror Confusion**

In Shepard v. International Business Machines Corp., 45 F.R.D. 536, 537 (S.D.N.Y. 1968), the court held that since damages issues often are more complex than liability issues, a non-bifurcated trial "would only clutter the record and tend to confuse the jury."  Juror confusion is considerably more likely and bifurcation is especially appropriate where different evidence is presented concerning liability issues and damages issues.  See Wright, supra, at *6 ("Bifurcation may be appropriate where 'the two phases involved different types of evidence…'") (internal citation omitted).

In Wright, supra, at *7, the court held:

"In the case at bar, I am persuaded that efficiency and fairness would best be served by submitting the question of liability to the jury before proceeding to the proof on damages. It appears that the central issue related to liability is the nature of plaintiff's job duties, while the central issues related to damages are the total number of hours worked by plaintiff, the amount of compensation he received, and the willfulness of defendant's alleged violation."

Liability and damages elements were "not inextricably entwined" because "the proof on the issue of whether plaintiff customarily exercised discretion" "may be based on generalizations" whereas proof concerning damages "necessarily relies upon numerical calculations." Id.; see also Hopkins, supra, at *3 (granting bifurcation motion as "liability and damages are not so intertwined that bifurcation would be impractical" because "the issues to be addressed at the liability phase mainly concern the security and safety precautions taken at South Station, whereas the damages phase concerns the injuries sustained by Hopkins").

9

In Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir. 1984), abrogated on other grounds by Sacerdote v. New York Univ., 9 F.4th 95 (2d Cir. 2021), the court held that there was no abuse of discretion in bifurcating the trial and that bifurcation was reasonable because "the two phases involved different types of evidence" insofar as "[t]he evidence in the liability phase was concerned with the prudence of the bank loan at the time when the loan was made whereas the damages phase involved evidence as to the amount of money eventually lost on account of the loan." See also Nnodimele v. Derienzo, 2016 WL 3561708, at *2 (E.D.N.Y. June 27, 2016) ("Plaintiff has persuaded this court that the issues presented at the liability and damages phases are largely if not entirely distinct: the former will require the jury to determine the conduct of the defendants, whereas the latter will require the jury to assess the effect of that conduct on plaintiff"); Lagudi v. Long Island R. Co., 775 F.Supp. 73, 75 (E.D.N.Y. 1991) (granting bifurcation motion because the liability phase of the trial would require evidence concerning training and the causes of the accidents whereas the damages phase of the trial would require evidence concerning the nature and extent of plaintiff's alleged injuries).

Bifurcation is favored where there is not a sufficient overlap between liability and damages evidence even if bifurcation will require witnesses to testify during both trial phases. See Guidi v. Inter-Cont'l Hotels Corp., 2003 WL 1846864, *1 (S.D.N.Y. Apr. 8, 2003). Bifurcation is warranted even where testimony concerning damages "may offer some circumstantial evidence" concerning liability where "such liability testimony would be significantly more limited than a thorough examination of the actual damages [plaintiff] suffered."

At bar, juror confusion will be significantly reduced by bifurcating the trial into liability and damages phases. With respect to Plaintiff's breach of contract claims and Defendants'

10

breach of contract counterclaim and affirmative defenses, evidence of liability will concern whether Defendants breached the subject agreements and whether Plaintiff was contractually required to perform certain advisory services for Defendants. In stark contrast, evidence of damages will involve mathematical calculations and expert testimony concerning, inter alia, industry custom and practice relating to the undefined contract term "full market commission" and the ***exact financial impact*** on the lease terms secured by Defendants of Plaintiff's failure to fully perform the subject agreements (i.e., how the ultimate lease terms obtained by Defendants would have been effected with respect to rent, tax and operating expenses escalations).

In fact, in its motion for summary judgment, Plaintiff moved only with respect to liability, not damages [ECF 188]. The jury should not have to parse the prolix, conflicting commission rate schedules of various real estate brokerages, how a broker calculates a "full market commission" over the course of a 20-year lease with rent, tax and operating expenses escalations and which yearly percentage escalations are standard before it is even determined that Plaintiff is entitled to a "full market commission" or that Plaintiff failed to fully perform the subject agreements.

With respect to Defendants' breach of fiduciary duties and breach of the covenant of good faith and fair dealing counterclaims and affirmative defenses, as discussed in detail supra, though evidence concerning Plaintiff's liability will be crucial and abundant, if the jury finds that Plaintiff breached its fiduciary duties, the jury will not have to engage in specific damages calculations.

### E. **Bifurcation Will Reduce Prejudice**

In Buscemi v. Pepsico, Inc., 736 F.Supp. 1267, 1272 (S.D.N.Y. 1990), the court granted the subject bifurcation motion, holding that evidence of plaintiff's claimed damages was distinct

11

from evidence of liability. The court further held, "…[E]vidence of harm to a plaintiff, regardless of the cause, may result in sympathetic jurors more concerned with compensating plaintiff for his injury than whether or not defendant is at fault." Id. The court noted that separate proceedings will "result in little sacrifice to efficiency, convenience or judicial economy, and will serve the interests of justice" because the same jury will used to try both the liability and damages phases and so "there will be no need to have repetitive testimony." Id.; see also Lagudi v. Long Island R. Co., 775 F.Supp. 73, 75 (E.D.N.Y. 1991) (granting bifurcation motion because "it is clear that evidence about plaintiff's alleged injuries may well serve only to confuse the jury as to the separate questions of liability and of damages" and "***the proposition that evidence on the question of damages may well have a prejudicial effect on the jury is almost certainly true of any litigation***") (emphasis supplied); Hopkins, supra, at *3.

In Nnodimele, supra, at *2, the court held that "bifurcation does safeguard against attempts to focus the jury on 'who plaintiff is' at the expense of the jury's careful consideration of what defendants did." See also Wright, supra, at *7 (holding that "evidence of a 'bogus check scheme' [to prove willful violation of labor laws] could potentially confuse the jury's consideration of liability and prejudice the defendant on that issue").

Bifurcation will ensure that Defendants are not prejudiced by the jury hearing evidence concerning the millions of dollars that Plaintiff alleges Defendants wrongfully have refused to pay. Instead, the jury will be able to focus on the narrow legal question of whether Defendants actually breached the subject agreements without being unduly influenced by the amount of claimed damages.

**F.      Bifurcation Will Promote Judicial Economy And Efficiency**

Bifurcation will promote judicial economy and efficiency by ensuring that the jury's attention will be fully focused on the correct complex issues at the appropriate time. See Crown Cork & Seal Co., Inc. Master Retirement Trust v. Credit Suisse First Boston Corp., 288 F.R.D. 335, 338 (S.D.N.Y. 2013) ("If the court bifurcates the trial, this evidence would be saved for the second phase, where the jury's attention will be fully focused on the apportionment issue. Bifurcation will thus allow the jury to tackle two formidable tasks—determining the liability of Credit Suisse and the apportionment of liability—one at a time").

Bifurcation is especially appropriate where "the litigation of the first issue might eliminate the need to litigate the second issue." Wright, supra, at *6 (internal citation omitted); see also Crown Cork, supra, at 338 ("…[L]itigation of the primary issues of Credit Suisse's liability could eliminate the need to litigate the apportionment issue"); Paulay v. John T. Mather Memorial Hospital, 2016 WL 829992, *2 (E.D.N.Y. Mar. 3, 2016) (granting bifurcation motion because, inter alia, "bifurcation will further the goal of efficiency" insofar as evidence of the nature and extent of plaintiff's damages will be rendered unnecessary if the jury finds no liability against defendant and "the evidence on liability and damages is not so intertwined as to render bifurcation inappropriate"); Shepard, supra, at 537

 (granting bifurcation motion, holding, "If validity and infringement are determined in favor of plaintiff, defendant might very well pay the damages to avoid another trial. If these issues are decided against plaintiff, no further trial will be necessary").

In Hopkins, supra, at *3, the court held, "Bifurcation here also serves the interests of judicial economy. If, following the liability phase, the jury finds that Defendants are not liable,

13

the court and the parties will be spared the cost and time of holding a trial on the damages phase." The court further held:

> "These judicial economy concerns are particularly acute in this case where much of the liability phase has been narrowed in pre-trial motion practice…Indeed, liability now largely revolves around the single issue of whether Defendants' conduct was reckless…By contrast, the damages phase is likely to be lengthy." Id.

At bar, pre-trial motion practice (including summary judgment motions) has significantly narrowed the scope of the liability phase of the trial. With respect to all claims and counterclaims, depending on the jury's findings concerning liability, the damages phase of the trial may be rendered entirely unnecessary. Given the complex nature of the industry-specific real estate concepts and terms at issue in this litigation and the in-depth expert testimony that will be needed to elucidate these concepts and terms to the lay jury in order for them to calculate damages, judicial economy and efficiency undoubtedly will be promoted through bifurcation.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that Defendants' *in limine* motion be granted in full, together with such other and further relief as to this Court seems just and proper.

Dated: New York, New York
November 7, 2022

Respectfully submitted,
AARON RICHARD GOLUB, ESQUIRE, P.C.
Attorneys for Defendants

      s/Nehemiah S. Glanc
BY:   Nehemiah S. Glanc
24 East 64th Street- Fifth Floor
New York, New York 10065
ph: (212) 838-4811
fx: (212) 838-4869

Of Counsel:
   Aaron Richard Golub
   Nehemiah S. Glanc
   Russell I. Zwerin

14