Aaron Richard Golub, Esquire, P.C.
Lawyers

24 East 64th Street, Suite 5                                           212-838-4811
New York, New York 10065                                Facsimile 212-838-4869

December 4, 2022

**VIA ECF AND BY E-MAIL**
Judge Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

      Re:    CBRE, Inc. v The Pace Gallery of New York, Inc., et. al.
              Index No. 17-cv-02452 (ALC) (SN)

Dear Judge Carter:

**Harnden's Proposed Damages Testimony Is Not Precluded on the Basis of Untimeliness**

      The Court has already ruled (ECF No. 332 pp. 26-33) that Defendants' testimony regarding damages concerning its second cause of action for breach of contract ***does not warrant the extreme sanction of preclusion of damages testimony***. On November 22, 2022, the Court, when evaluating the four factors, held (ECF No. 332, p. 31):

> "While I find that the balance of these factors do weigh in favor of preclusion, given the important nature of this testimony to Pace's damages case, I decline to impose such a severe sanction implicating Pace's damages at this late stage of the case. However, I find that the new damages opinion is too speculative and conclusory for expert testimony and should be excluded on that basis."

Clearly, on the timeliness issue, the Court ruled in Defendants' favor.

      Plaintiff's Daubert motion (ECF Nos. 277-278) argued to preclude the testimony of Defendants' expert Suzy Reingold ("Reingold") concerning damages for Defendants' Second Counterclaim for breach of contract on the basis of, inter alia, Reingold's alleged late-filed Declaration (ECF No. 279-4) (see ECF No. 278 pp. 7-12). In opposition, Defendants argued that the non-exclusive four-factor analysis in Point Prods. A. G. v. Sony Music Entmt., Inc., 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) (ECF No. 278 p. 9) (derived from Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006))[1] is ***not required*** when the court determines that a purported disclosure deficit was harmless or substantially justified. See FRCP 37(c)(1); see also Williams v. Morton, 343 F.3d 212, 222-23 (3d Cir. 2003).[2] The first element, i.e., Defendants'

---

[1] See Patterson, supra, at 117 ("(1) the party's explanation for the alleged failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance").

[2] Arista Records LLC v. Lime Group LLC, 784 F. Supp. 2d 398, 417 (S.D.N.Y. 2011) ("…[B]ecause refusing to admit evidence that was not disclosed during discovery is a drastic

Aaron Richard Golub, Esquire, P.C.

explanation for the alleged delay, is in Defendants' favor. On November 22, 2022, the Court precluded Reingold from opining on Defendants' damages for their second cause of action for breach of contract. Based on that ruling, Defendants propose to use the testimony of Defendants' Chief Operating Officer Chris Harnden ("Harnden").

The second factor, i.e., the importance of the testimony, weighs strongly ***against preclusion*** considering the value of Harnden's testimony concerning Defendants' Second Counterclaim and Defendants' damages and that preclusion would be outcome-determinative. Preclusion of evidence and testimony concerning damages is a drastic sanction amounting to a denial of access to justice and a windfall to the adversary. See World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 159-60 (2d. Cir. 2012) (holding that dismissing plaintiff's damages claim was not an appropriate exercise of discretion, even assuming that plaintiff acted willfully in submitting a late expert report without first seeking the court's permission, because striking a damages request is a "harsh sanction, one akin to dismissing the action altogether"); see also Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213 (2d Cir. 2009) (holding that the trial court abused its discretion in excluding an expert opinion where "the testimony of [the excluded expert] was critical to [defendant's] defense").

The third factor, i.e., alleged prejudice, weighs heavily in Defendants' favor. Plaintiff cannot claim prejudice concerning Defendants' damages on its second counterclaim when Reingold's Declaration regarding damages was submitted on August 14, 2020 (ECF No. 212)— ***over two years ago***.

The fourth factor, i.e., a possibility of continuance, also weighs in Defendants' favor. As the Court noted on Friday, December 2, 2022 when this issue arose, Plaintiff would ***not*** be prejudiced by a short, limited deposition of Harnden.

In Raishevich v. Foster, 247 F.3d 337, 342-343 (2d Cir. 2001), the court cited the "Bigelow[3] principle," holding that where defendants' wrongdoing prevents plaintiff from proving the ***exact amount of damages***, plaintiff is entitled to prove its damages based upon a just and reasonable estimate from relevant data. The court further held, "Although [plaintiff] bore the burden of persuasion with regard to his entitlement to compensatory relief, he had no obligation to offer a mathematically precise formula as to the amount of damages." Id.

The Bigelow principle provides a wronged party with "the benefit of a more liberalized standard of proof and prevents the [wrongdoer] from 'profit[ing] by his wrongdoing at the expense of his victim.'" Id., 343; see also MEI Int'l, Inc. v. Schenkers Int'l Forwarders, Inc., 807 F.Supp. 979, 988-89 (S.D.N.Y. 1992) (plaintiff's agent permissibly and capably calculated damages "based on his relevant business experience and his experience with the various FILA transactions…" by "taking the average customs duty he paid on the first two lots, 15-18%, and

---

remedy, courts will resort to preclusion only in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the [FRCP]"); Ward v. Nat'l Geog. Soc'y, 2002 WL 27777 (S.D.N.Y. Jan. 11, 2002); Grdinich v. Bradlees, 187 F.R.D. 77, 79 (S.D.N.Y. 1999).

[3] Bigelow v. R.KO Radio Pictures, Inc., 327 U.S. 251, 264 (1946).

Aaron Richard Golub, Esquire, P.C.

choosing the higher 18% duty for his calculation of what the duties would be on reimportation of the export lot" and adding "a fairly generous approximation" of transport costs).[4]

Where the jury finds that a party was damaged, but is unsure of the exact amount of damages, the jury must award damages to remedy the wrong done.  See Bigelow, supra, at 265-66 ("Difficulty of ascertainment is no longer confused with right of recovery for a proven invasion of the plaintiff's rights"); see also Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 496 (2d Cir. 1995); Process Am., Inc. v. Cynergy Holdings, LLC, 839 F.3d 125, 141 (2d Cir. 2016) ("…[A] plaintiff need only show a stable foundation for a reasonable estimate of the damages incurred as a result of the breach.  *At that point, the burden of any uncertainty as to the amount of damages is on the breaching party*") (internal citations omitted) (emphasis added).

### *Harnden is Qualified to Provide Lay Opinion Testimony Concerning Damages*

It is well settled that a high level executive and/or business owner is qualified to provide lay opinion testimony as to the breach of contract damages suffered by a company.  See Allied Systems, Ltd. v. Teamsters Auto. Transport Chauffeurs, 304 F.3d 785, 792 (8th Cir. 2002);[5] see also Securitron Magnalock Corp. v Schnabolk, 65 F.3d 256, 265 (2d. Cir. 1995);[6] Western

---

[4] Venture Tech., Inc. v Nat'l Fuel Gas Co., 1981 WL 2013, *16 (W.D.N.Y. Jan. 9, 1981), rev'd on other grounds, 685 F.2d 41 (2d. Cir. 1982), holding:

> "This use of less-than-certain proof has been permitted simply because any alternative would allow a wrongdoer to profit from his wrong…As long as there is some evidentiary basis for an estimate of the lost profit, such an estimate may not be excluded."

[5] Holding:
> "Personal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience is a sufficient foundation for lay opinion testimony…*The opinion testimony of an officer of a business as to value or projected profits or as to damage to the business, without qualifying the officer as an expert, 'is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.'*  Fed.R.Evid. 701, advisory committee's note (2000).  We find no abuse of discretion in the district court's inclusion of Grover's testimony.' (emphasis supplied) (internal citation omitted).

[6] Holding:
> "Contrary to appellants' contention, Robert Cook [plaintiff's president] gave extensive testimony regarding the damages sustained by his company…Cook was entitled to prove damages through a 'projection of lost profits based on evidence of record regarding decreased sales'…Cook's projections provided the jury with a reasonable basis upon which to calculate lost profit damages…*Securitron's president was fully capable of examining the company's sales over a period of years*, noting a slow-down, and testifying to the estimated losses attributable to the defamatory and fraudulent activities of appellants…*Accordingly, a president of a company, such as Cook, has 'personal knowledge of his business…sufficient to make…[him] eligible under Rule 701 to testify as to how lost profits could be calculated.'…A company president certainly is capable*

3

Oilfields Supply Co. v. Goodwin, 461 Fed.Appx. 624, 626 (9th Cir. 2011);[7] Merritt Hawkins & Associates, L.L.C. v. Gresham, 861 F.3d 143, 152-153 (5th Cir. 2017);[8] Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993).

Harnden undoubtedly has substantial experience as a high-level executive of Pace Gallery ("Pace") and has copious experience analyzing the financial considerations implicated by Pace's ownership and/or leasing of gallery space (i.e., rent, operating expenses and taxes). After graduating from Yale University (Trial Transcript, 512:2-3), Harnden began working for Pace and took continuing education classes at New York University in accounting and business management (Harnden Deposition Transcript, 15:21-16:21) (ECF No. 185-5).

Chris Harnden has been employed by Pace since 1995 (Trial Transcript, 511:18-19) and has served as Pace's Chief Operating Officer since approximately 2004 (Id., 511:20-24). As Chief Operating Officer, Harnden is responsible for reviewing and signing material contracts on behalf of Pace (Id., 513:13-15), "help[s] to run the infrastructure of the art gallery business" (Id., 513:4-5) and is "responsible for the overall business operations of the gallery, which includes risk management [and] includes oversight of the various parts of the business, such as legal, financial [and] technology" (Id., 512:24-513:4). Harnden has signed dozens of contracts on behalf of Pace (Id. 513:16-18).

---

*of projecting lost profits where the projection is based on evidence of decreased sales*…" (emphasis supplied) (internal citation omitted).

[7] Holding:
"The district court likewise did not err in admitting Jerry Goodwin's non-expert, firsthand testimony regarding his estimated crop yield…It was within the court's discretion to find that Goodwin's 45 years of experience as a farmer and rancher amply qualified him to provide such lay opinion. *Any calculations involved in Goodwin's testimony required only rudimentary math skills and could qualify as lay opinion testimony under Fed.R.Evid. 701.*" (emphasis supplied).

[8] Holding:
"A company president may provide 'a broader range of testimony than a traditional lay witness…when testifying to matters concerning [his] business'…accord Fed. R. Evid. 701 advisory committee's note to 2000 amendments *('[M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an…expert.'*).
**Lost Profits**
*Generally, company officers can testify about lost profits 'if the witness has direct knowledge of the business accounts underlying the profit calculation'* …Moreover, on cross-examination, Defendants had every opportunity to traverse Smith's figures, credibility, and methodology." (emphasis supplied) (internal citations omitted).

4

Aaron Richard Golub, Esquire, P.C.

Accordingly, the Court should allow Harnden to testify concerning Defendants' damages on its second counterclaim for breach of contract.

Respectfully Submitted,

Nehemiah S. Glanc

cc: Jeff E. Scott, Esq. by ECF and e-mail
Jennifer Ann Surprenant, Esq. by ECF and e-mail
Ben Wood, Esq. by ECF and e-mail