

Jeff E. Scott
Tel 310.586.7715
Fax 310.586.7800
jeff.scott@gtlaw.com

December 4, 2022

**VIA ECF AND EMAIL**

Hon. Andrew L. Carter, Jr.
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 435
New York, NY 10007

      Re:    *CBRE, Inc. v. The Pace Gallery of New York, Inc., et al.*, No. 17-cv-02452-ALC-SN

Dear Judge Carter:

Pace's breach of contract counterclaim should be stricken and Pace should be precluded from offering any damages evidence on its counterclaims.[1] This case is in the middle of a long-delayed trial. Even at this late date, Pace has never disclosed any damages computations or supporting documents as required by Rule 26(a) of the Federal Rules of Civil Procedure. Pace instead seeks to conduct a trial by ambush. The only appropriate sanction for Pace's wholesale disregard of its discovery obligations is exclusion of the evidence.

Even setting aside Pace's discovery violations, Pace's transparent bid to repackage expert testimony as lay witness testimony must be rejected. Pace claimed, in opposing CBRE's *Daubert* motion, that precluding its expert from testifying on its damages "would be outcome-determinative" for its breach of contract claim.[2] Now that the Court has precluded Pace's expert from offering opinions on Pace's damages, Pace cynically claims that its damages testimony is a "simple mathematical calculation" that anyone can perform. (Trial Tr. 665:2.) Pace was right the first time. Its damages claims require expert proof and Pace should be barred from offering this testimony through the undisclosed testimony of lay witnesses.

## I.    Relevant Procedural Background

Pace filed its initial Rule 26 disclosures in April 2018. (Defendants The Pace Gallery of New York, Inc.'s and The Pace Gallery LLC, D/B/A Pace Gallery's Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1) ("Pace Initial Disclosures") 5, ECF No. 55.) Pace's Initial Disclosures included no damages calculation because Pace had not asserted any counterclaims. (*Id.* at 5; Answer with Affirmative Defenses, ECF No. 51.) Anticipating that it might do so, however, Pace added that "[u]pon the assertion of any counterclaims in this action,

---

[1] Unless otherwise stated, all capitalized terms herein have the same meaning as in the Joint Pre-Trial Order. (Joint Pre-Trial Order ("JPTO"), ECF No. 241.)

[2] Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Preclude Putative Expert Suzy A. Reingold ("Pace *Daubert* Opp.") 23, ECF No. 288l

December 4, 2022
Page 2

[Pace] will supplement their disclosures within 20 business days of such assertion." (Pace Initial Disclosures 5.)

Pace amended its answer twice before the close of discovery. Neither pleading asserted any counterclaims. (First Amended Answer with Affirmative Defenses, ECF No. 52; Second Amended Answer with Affirmative Defenses, ECF No. 61.) Discovery closed on November 7, 2019. (ECF Nos. 140, 161.) Because Pace had no counterclaims pending during discovery, no discovery was taken on any of Pace's alleged damages.

On November 14, 2019, after the close of discovery, Pace filed its fourth and final answer, which for the first time asserted counterclaims against CBRE. (Third Amended Answer with Affirmative Defenses and Counterclaims ("Answer and Counterclaims") ¶¶ 96–138, ECF No. 163.) Pace's breach of contract counterclaim generally alleged that CBRE "fail[ed] to undertake rudimentary acts to ensure that Defendants received optimal lease terms." (*Id.* ¶ 113.) Pace faulted CBRE for, among things, not analyzing Pace's existing lease or any draft term sheets or leases, and for not engaging various other departments at CBRE. (*Id.* ¶¶ 113–14). But Pace did not offer a specific theory of damages or identify any formula or methodology to calculate its damages. It simply asserted that Pace was "damaged in a sum believed to be in excess of $1,000,000.00, the precise amount to be proven at trial." (*Id.* ¶ 115.)

Nine months after discovery closed, in August 2020, Pace submitted a declaration from its expert on summary judgment. (Declaration of Suzy A. Reingold, ECF No. 212.) The Reingold Declaration was the first time Pace specified its theory of damages. Specifically, the Reingold Declaration contended that CBRE's supposed failure to offer various services to Pace, and Stuart Siegel's supposed bad advice, resulted in an "over $60,000,000.00 increase in the yearly compounded rental, tax and operating expenses" that Pace owes its landlord. (*Id.* ¶ 8.)

Nearly three years after discovery closed, in the June 2022 Joint Pretrial Order, Pace practically doubled its claimed damages for breach of contract again. Parroting language from the Reingold Declaration, Pace asserted that CBRE's supposed failure to provide advice and services "caused an over $100,000,000.00 increase in the yearly compounded rental, tax and operating expenses" that Pace owes its landlord. (JPTO 41.) Tracking the language of Reingold Declaration, Pace indicated that it would call Reingold to testify on its damages. (*Id.* at 34.)

For the first time in the JPTO, Pace indicated, in a conclusory fashion and without any specifics, that three *fact* witnesses would also testify about Pace's damages: Chris Harnden, Marc Glimcher, and Arne Glimcher. (JPTO 33–34.) CBRE objected each time on the ground that there was no record evidence of Pace's damages. (*Id.*) None of these witnesses were deposed on Pace's alleged damages because Pace had no counterclaims in the case during discovery. For the same reason, no written discovery was taken on Pace's alleged damages.

In October 2022, CBRE moved to preclude Reingold from offering testimony on damages. Pace opposed, arguing that preclusion of Reingold's testimony on Pace's damages "would be outcome-determinative" for its breach of contract claim. (Pace *Daubert* Opp. 23.) Applying the Rule 37(c) four-factor test, the Court found that Pace had no excuse for the untimely opinions; that CBRE had been prejudiced by the belated disclosure of the damages opinions; and that no continuance was possible. (Hr'g Tr. dated Nov. 22, 2022 30:13–31:4.) While the Court found that Reingold's opinions were untimely, it did not preclude the opinions on that basis. (*Id.* at 31:5-9.)

December 4, 2022
Page 3

The Court instead precluded Reingold's damages testimony because it was "too speculative and conclusory." (*Id.* at 31:9-12.)

Now, in the middle of trial, Pace seeks to elicit testimony from Harnden on the damages Pace sustained from the "compounding of operating expenses and compounding of taxes in the lease and the fact the lease has a 3 percent escalation clause." (Trial Tr. 662:5-7.) That is the exact same testimony that Reingold intended to offer, and Pace has admitted that it seeks to admit this evidence through Harnden because the Court precluded Reingold. (*Id.* at 664:4-7.) Harnden testified that he has calculated Pace's damages. (*Id.* at 626:14.) Pace's counsel has conceded that these calculations have never been provided to CBRE. (*Id.* at 663:5-15.)

## II.   The Court Should Strike Pace's Breach of Contract Counterclaim and Preclude Pace from Offering Damages Evidence on Its Counterclaims.

### A.  Pace Violated Its Rule 26(a) Disclosure Obligations.

Pace violated its obligation to voluntarily disclose its damages computation and supporting documents for its counterclaims. Rule 26(a) of the Federal Rules of Civil Procedure provides that:

> a party must, without awaiting a discovery request, provide to the other parties: . . . *a computation of each category of damages claimed by the disclosing party*—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered
> (Fed. R. Civ. P. 26(a)(1)(A)(iii) (emphasis added).)[3]

Rule 26(a) is strictly interpreted. In *Design Strategy, Inc. v. Davis*, the Second Circuit considered a party's failure to disclose a computation of alleged lost profits damages and supporting documents. 469 F.3d 284 (2d Cir. 2006). The plaintiff argued that it had satisfied Rule 26(a) because its lost profits damages were based on "simple arithmetic" that the defendant could have done for itself based on financial statements produced during discovery. *Id.* at 293. The Second Circuit rejected this contention, affirming the district court's conclusion that the plaintiff had violated Rule 26(a). *See id.* at 295–96. The court explained that "by its very terms Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents." *Id.* at 295 (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)). Moreover, the party must provide this computation "voluntarily, *i.e.*, 'without awaiting a discovery request,'" and must produce the "supporting documents . . . as if a request for such material had been made under Rule 34." *Id.* at 295, 296.

Pace has conceded that it has not disclosed its damages computation for its breach of contract counterclaim. (Trial Tr. 663:5-15.) Pace has also not disclosed any documents supporting its supposed damages computation. Pace first asserted counterclaims after the close of discovery, and it never filed amended disclosures or produced documents to support a damages calculation.

---

[3] Unless otherwise indicated, this brief omits all internal citations, quotation marks, footnotes, brackets, alterations, and ellipses from citations.

December 4, 2022
Page 4

In a colloquy with the Court on Friday, Pace's counsel stated that Pace's breach of contract damages result from "a simple mathematical calculation." (Trial Tr. 665:2.) As *Design Strategy* makes clear, however, that does not excuse a party from voluntarily disclosing its damages calculation and supporting documents. Pace was under an unambiguous obligation to voluntarily disclose its damages computation and supporting documents. It never has. Accordingly, Pace violated its disclosure obligations under Rule 26.

**B.  The Appropriate Sanction Is Striking Pace's Breach of Contract Counterclaim and Precluding Evidence of Pace's Damages.**

The Court should strike Pace's breach of contract counterclaim and preclude Pace from offering any evidence of Pace's damages through Harnden or any other witness. Rule 37(c) of the Federal Rules of Civil Procedure authorizes sanctions for a party's failure to comply with the disclosure obligations of Rule 26. The Second Circuit has explained that Rule 37 sanctions have three purposes.

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault. . . . [A]lthough preclusion of evidence and dismissal of the action are harsh remedies and should be imposed only in rare situations, they are necessary to achieve the purpose of Rule 37 as a credible deterrent rather than a "paper tiger."
>
> (*Update Art, Inc. v. Modiin Pub., Ltd.*,
> 843 F.2d 67, 71 (2d Cir. 1988).)

"Pursuant to Rule 37(c)(1), if a party fails to provide Rule 26(a) or (e) information, the party generally is not permitted to use that information at trial 'unless the failure was substantially justified or is harmless.'" *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013) (quoting Fed. R. Civ. P 37(c)(1)). "In considering whether to exclude evidence under this standard, courts refer to a nonexclusive list of four factors: (1) the party's explanation for its failure to disclose, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party, and (4) the possibility of a continuance." *Id.* (citing *Design Strategy*, 469 F.3d at 294). "The party that violates Rule 26 bears the burden of showing that its violation was either substantially justified or harmless." *Id.* The court need not find that the party violating Rule 26 acted in bad faith before precluding evidence. *See Design Strategy*, 469 F.3d at 296.

"[C]ourts have readily imposed sanctions where a party's failure to disclose its damages theory in a timely manner prevented its adversary from pursuing discovery targeted at that theory." *Agence France Presse v. Morel*, 293 F.R.D. 682, 686 (S.D.N.Y. 2013). In *Design Strategy*, the Second Circuit applied these factors to uphold the exclusion of evidence of the plaintiff's lost profits damages. It explained:

> Although the second . . . factor favors [plaintiff] because [plaintiff's] evidence of lost profits was essential to proving these damages, all of the other factors weigh heavily in favor of exclusion. [Plaintiff] has not yet explained why it omitted "lost profits" as a

December 4, 2022
Page 5

> category of damages in its Initial Disclosure. The prejudice to the
> defendants in having to prepare for this evidence would have been
> severe, as discovery would have had to be reopened to determine
> whether [plaintiff's] calculations were proper. . . . Finally, weighing
> heavily on both the prejudice and possibility of continuance factors
> was the fact that discovery had been closed for "approximately one
> and a half years," and at the time of the offer of expert testimony
> there was only a "short time left before trial."
>
> (*Design Strategy*, 469 F.3d at 296–97.)

In another case, the defendant was precluded from offering damages evidence on its counterclaims where it first disclosed a damages computation four months after discovery closed. *See Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09-cv-3698 (LAP), 2010 WL 3341837, at *1 (S.D.N.Y. Aug. 17, 2010). Weighing the factors, the court found that the defendant "offered no explanation for its failure to disclose a computation of damages," that the prejudice to the plaintiff was "particularly great" because discovery "would have to be reopened for [the plaintiff] appropriately to respond," and that "the closure of discovery four months ago . . . weighs strongly against the possibility of a continuance." *Id.* The court reasoned that these factors "outweigh[ed] the importance of [defendant's] damages evidence, even though [defendant] may be denied any recovery as a result, because [the defendant] has disregarded its discovery obligations without any explanation at all." *Id.*; *see also 24/7 Recs., Inc. v. Sony Music Ent., Inc.*, 566 F. Supp. 2d 305, 317–18 (S.D.N.Y. 2008) (precluding damages evidence at trial where the party "failed to make [the] mandatory initial disclosure" of a damages theory "and its accompanying damages computation, thereby depriving defendants of a meaningful opportunity to conduct discovery as to this damages theory").

Another court in this district precluded a party from offering damages evidence for "fail[ing] to provide a coherent computation of damages from their initial imaginary computation of over $66,000,000 in damages through their ultimate bald assertion of somewhat less than $4,000,000" and "also fail[ing] to provide the 'documents or other evidentiary material on which computation is based.'" *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 237 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)). Of note, the sanctioned party in *Gym Door Repairs* had attempted to amend its disclosure to add a damages calculation methodology, but the court found this insufficient because it was based on the work of an expert whose report was stricken and who was precluded from testifying at trial. *See id.* In still another case, a party was even precluded from amending its Rule 26 disclosures to add a new category of damages where the proposed amendment came shortly *before* fact discovery was scheduled to close. *See Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Fin. Corp.*, No. 04-cv-3854 (RCC)(AJP), 2005 WL 977850, at *2, *1 (S.D.N.Y. Apr. 28, 2005); *see also id.* at *2 (collecting cases).

The Court has discretion to impose serious sanctions for discovery violations of this magnitude, including "striking the pleadings in whole or in part" or "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(iii), (ii); *see* Fed. R. Civ. P. 37 37(c)(1)(C) (authorizing district courts to issue sanctions listed in Rule 37(b) for failures to disclose). Here, the appropriate remedies are to strike Pace's breach of contract counterclaim and to preclude all evidence of its alleged damages. Such sanctions are "necessary to achieve the purpose of Rule 37 as a credible deterrent rather than a 'paper tiger.'" *Update Art*, 843 F.2d at 71.

December 4, 2022
Page 6

*Pace's explanation for its failure to disclose.* Pace's explanation rests on a fundamental misapprehension of the law. In a colloquy with the Court, Pace's counsel stated that Pace did not provide a damages calculation to CBRE because he believed no disclosure is required when the evidence is offered through a fact witness. (Trial Tr. 663:11-15.) That is not the law. As explained above, a party must voluntarily disclose its damages calculation and its supporting documents. *See Design Strategy*, 469 F.3d at 296–97 (citing Fed. R. Civ. P. 26(a)). Pace failed to do so.

*Prejudice to CBRE.* CBRE will be severely prejudiced if Pace is permitted to offer its damages evidence at trial. CBRE had no opportunity to test Pace's theory and calculation of damages during discovery *because Pace asserted no counterclaims during discovery*. "This is the type of 'sandbagging' of adversaries that Rule 37(c)(1) was designed to prevent . . . ." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). As shown above, numerous courts have found serious prejudice in like circumstances.

In fact, the circumstances in this case are more extreme than in the decisions cited above. After the parties filed post-discovery amendments to the pleadings, CBRE was principally pursuing a $7 million commission claim, and Pace was asserting four counterclaims seeking to nullify CBRE's commission and to recover $1 million on some undisclosed basis. In the years that followed, *all following the close of discovery*, Pace finally identified a theory of damages and ballooned its damages estimate to $100 million. The ineluctable conclusion is that Pace developed its theory and calculated its damages after discovery had closed. "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." *Update Art, Ltd.*, 843 F.2d at 70 (quoting *Taylor v. Illinois*, 484 U.S. 400, 408–09 (1988)).

*Possibility of a continuance.* No continuance is possible. We are in the middle of a jury trial. This case is in a far more advanced stage than the cases where such evidence was precluded prior to trial for failure to meet other deadlines. Given Pace's extreme dilatory tactics, flagrant disregard of its discovery obligations, and attempt to conduct a trial by surprise, a continuance would be an unearned boon to Pace. The remedy cannot be to pause the trial and allow CBRE to conduct belated—and necessarily highly abbreviated—discovery into Pace's undisclosed damages theories, or any other sanction short of exclusion. CBRE needed an opportunity to depose any "behind the scenes" expert on whom Harnden purportedly relied, have its own expert evaluate the underlying support for any analysis and conduct its own market analysis, all in a case where Pace's position throughout has been that CBRE was told it would not be involved in any deal involving its current landlord. This is classic trial by ambush and cannot be tolerated.

*Importance of the evidence.* While the sanctions CBRE seeks here will doom Pace's counterclaims seeking compensatory damages, courts do not hesitate to preclude evidence where, as here, the remaining factors strongly favor preclusion. *See, e.g.*, *Design Strategy*, 469 F.3d at 296–97 (upholding exclusion of important damages evidence where "all of the other factors weigh heavily in favor of exclusion"); *Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 12 (2d Cir. 2017) (summary order) (upholding exclusion of "highly important" evidence where "[t]he other factors . . . favor exclusion"); *Spotnana, Inc.*, 2010 WL 3341837, at *1 (precluding damages evidence where the remaining factors "outweigh[ed] the importance of [defendant's] damages evidence, even though [defendant] may be denied any

December 4, 2022
Page 7

recovery as a result, because [the defendant] has disregarded its discovery obligations without any explanation at all").

Accordingly, Pace's breach of counterclaim should be stricken from the pleadings and Pace should be precluded from offering evidence of its alleged damages.[4]

### III. Pace Cannot Offer Reingold's Precluded Damages Testimony Through Its Fact Witnesses.

Even if Pace's discovery violations were excused, the Court should deny Pace's transparent bid to repackage Reingold's barred damages testimony as the testimony of its fact witnesses. Pace has candidly admitted that is its strategy:

> THE COURT: Forgetting whether [Mr. Harnden's] an expert or not, he is a witness. Was this included in the Rule 26 disclosures or anything else? Was this given to the plaintiffs ever before, these calculations that you're talking about?
> MR. GLANC: Yes. In the pretrial order.
> THE COURT: Okay. For this witness?
> MR. GLANC: There was a statement of damages on the pretrial order and how he calculated the damages.[5]
> THE COURT: But was that dealing with the expert or this witness?
> MR. GLANC: *It was dealing with the expert, but once -- but the -- once you discounted the expert's testimony on the damages, the party itself is able to testify about its own damages.* And, in fact, it doesn't even have to come to a precise calculation. An approximate calculation is more than enough.
> (Trial Tr. 663:19–664:9 (emphasis added).)

### A.  Pace Cannot Evade the Court's *Daubert* Ruling Through Fact Witnesses.

Pace cannot offer unreliable expert testimony in the guise of lay opinion testimony from its fact witnesses. Lay opinion testimony is governed by Rule 701 of the Federal Rules of Evidence. It provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

---

[4] As narrowed through Pace's proposed jury instructions, Pace's counterclaims for breach of fiduciary duty and breach of the implied covenant appear to no longer seek the compensatory damages identified in the JPTO. (Defendants' Jury Instructions 10–12, 14, ECF No. 315; JPTO 40, 41.) To the extent Pace attempts to revive these claims for compensatory damages, they should be stricken for the reasons stated above.

[5] This statement by opposing counsel is incorrect. The only "disclosure" in respect to Harden's alleged testimony on damages is that he "is expected to testify . . . [regarding] Pace's damages." (*See* JPTO 33.) There is absolutely no disclosure that Harnden calculated Pace's alleged damages nor any discussion of how supposedly he did so. (*See* Trial Tr. 663:25–664:1.)

December 4, 2022
Page 8

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

(Fed. R. Evid. 701.)

Here, there is no evidence that Harnden's proffered testimony is based on his own perception. *See Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 321 n.4 (S.D.N.Y. 2009) (refusing to consider lay witness's damages declaration where "nothing in his declaration indicates that his purported lay opinions concerning [plaintiff's] claimed damages are based on his own personal knowledge or 'rationally based on his perception,' thus demonstrating that his opinions cannot satisfy the requirements of Rules 602 and 701 for lay opinion testimony"), *aff'd*, 976 F.3d 239 (2d Cir. 2020). Because Pace obviously is repackaging expert testimony as fact witness testimony, it appears that Harnden is simply parroting Reingold's rejected work rather than relying on his own perception.

Nor can Pace show that Harnden's testimony is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). To makes its damages argument, Pace needs to provide competent evidence of the market on escalations, operating costs, taxes and the other components of its damages theory. It has produced nothing. Rather, through incompetent opinions offered in a vacuum, Pace seeks to offer through Harnden the exact same damages testimony it sought to offer through Reingold—its expert witness. Harnden's testimony requires the same type of specialized knowledge requiring expert testimony that the Court has already excluded because it was produced without any supporting disclosures about the market or any analysis that CBRE had the opportunity to evaluate and test. As Harnden is no expert, he cannot offer this testimony.

Finally, permitting Harnden to offer damages testimony would thwart the purpose of Rule 701(c). That provision was designed "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004); *see also, e.g.*, *Baumgart v. Transoceanic Cable Ship Co.*, No. 01-CIV-5990 (LTS)(HBP), 2003 WL 22520034, at *3 (S.D.N.Y. Nov. 7, 2003) (precluding fact witness from testifying regarding "wages and potential earnings" of sailors similarly situated to plaintiff because his "analysis clearly relies on technical or specialized knowledge within the scope of Rule 702"). That is precisely what Pace seeks to do here. The Court excluded Reingold's proposed expert testimony on damages because it was "speculative and conclusory"—in a word, unreliable. (Hr'g Tr. dated Nov. 22, 2022 31:10-11.) Pace cannot sidestep the reliability requirement by simply offering this unreliable testimony through Harnden.

## B. Pace Is Estopped from Eliciting Damages Testimony Through Fact Witnesses.

Further, Pace is estopped from arguing that its fact witnesses can testify on Pace's alleged damages.

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). "This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.*

December 4, 2022
Page 9

"Typically, judicial estoppel will apply if: 1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *In re Adelphia Recovery Tr.*, 634 F.3d 678, 695–96 (2d Cir. 2011). Here, each factor is satisfied.

*Clearly inconsistent positions*. Pace's prior position was that its damages evidence *required* expert testimony. In opposing CBRE's *Daubert* motion, Pace argued that precluding Reingold's testimony "would be outcome-determinative" on its breach of contract counterclaim. (Pace *Daubert* Opp. 23.) In other words, without Reingold, there would be no damages testimony and the claim would fail. Pace added that Reingold should be permitted to testify regarding Pace's damages based on her "50 years of industry experience," including her many years as a broker manager and 10 years' experience as a lecturer at NYU "concerning the 'lease document.'" (*Id.* at 18, 19.)

Now that the Court has precluded Reingold's damages opinions, Pace has reversed itself. According to Pace, proving its contract damages "doesn't require expert testimony." (Trial Tr. 665:2-3.) As Pace would now have it, its contract damages can be computed with "a simple mathematical calculation"—so simple, in fact, that Pace's trial counsel stated to the Court, "Everyone uses it. Everyone. You would use it, I would use it . . . ." (*Id.* at 672:1-2.)

*Former position adopted*. In denying CBRE's argument that Reingold's damages testimony should be precluded under Rule 37(c), the Court "adopted in some way" Pace's prior position. *Adelphia Recovery Tr.*, 634 F.3d at 695. The Court found that Reingold's post-discovery damages opinions were new and untimely, and that three of the four Rule 37(c) factors favored preclusion: Pace had no excuse for the untimely opinion, CBRE was prejudiced because it had no opportunity to take discovery on Reingold's opinions, and no continuance was possible. However, the Court declined to preclude Reingold's opinions under Rule 37(c) "given the important nature of this testimony to Pace's damages case." (Hr'g Tr. dated Nov. 22, 2022 31:6-7.) The Court therefore credited—at least "in some way"—Pace's position that the loss of Reingold's damages testimony would doom its contract claim.

*Unfair advantage to Pace.* Pace would earn an unfair advantage if its new position were honored. As explained above, CBRE would be severely prejudiced by the introduction of Pace's still-undisclosed damages evidence through fact witnesses in the middle of trial.

Accordingly, Pace's fact witnesses cannot offer testimony on Pace's alleged damages.

Respectfully submitted,

*/s/ Jeff E. Scott*

Jeff E. Scott

cc: All counsel of record (via ECF)