

Jeff E. Scott
Tel 310.586.7715
Fax 310.586.7800
jeff.scott@gtlaw.com

December 4, 2022

**VIA ECF AND EMAIL**

Hon. Andrew L. Carter, Jr.
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 435
New York, NY 10007

    Re:    *CBRE, Inc. v. The Pace Gallery of New York, Inc., et al.*, No. 17-cv-02452-ALC-SN

Dear Judge Carter:

    We write in response to Pace's letter brief (ECF No. 337) regarding Chris Harnden's proposed damages testimony ("Pace Ltr. Br.") and in further support of CBRE's letter brief (ECF No. 338) seeking exclusion of that same testimony ("CBRE Ltr. Br.").

    In respect to today's briefing, the Court ordered the parties to address, among other things, the implications of Pace's failure to comply with Rules 26 and 37 as those Rules pertain to Pace's last-minute attempt to have Harnden (a lay witness with no substantive real estate experience)[1] serve as a back-door conduit for the damages analysis that Pace's expert was precluded from offering. Rather than do that, Pace cites to inapposite general principles that business executives can offer testimony about a company's damages that do not require specialized knowledge or expert opinion. Pace offers no explanation as to why it should be permitted to present wholly new damages calculations that were never disclosed or tested in discovery in express violation of the Rules and to CBRE's extreme prejudice. Its attempted end-run around this Court's *Daubert* ruling cannot be countenanced. If, notwithstanding her qualifications, Reingold was excluded because she had not offered any analysis and information sufficient under the *Daubert* standards, then an unqualified lay witness cannot present these undisclosed opinions through the back-door under the guise of ordinary business calculations.

    Pace willfully failed to abide by the disclosure obligations of the Rules. At this late juncture, in the middle of trial, there is no curative possibility to remedy these failures, and the appropriate sanction is exclusion.

---

[1] Harnden expressly testified that he hires real estate experts like Stuart Siegel and Mr. David Drewes at Willkie Farr & Gallagher to advise him in respect to these issues. (*See, e.g.*, Trial Tr. 520:6–8, 520:15–16, 564:4–19, 564:25–565:1, 565:9–14.)

I.      **Pace's Damages Evidence Must Be Precluded.**

   A.  **Pace Does Not Contend It Complied with Its Disclosure Obligations.**

Consistent with Pace's concession in open court that its damages computations had not been disclosed (Trial Tr. 671:18–672:4), Pace made no effort in its letter motion to argue that it had satisfied its Rule 26 obligations. Plainly, it did not.

   B.  **The Appropriate Sanction Is Preclusion of Pace's Damages Evidence.**

Pace conflates the proffered Harnden testimony with the Declaration of Suzy A. Reingold. The situations are not the same. Although Reingold's post-discovery damages opinions were woefully insufficient—and were therefore precluded as "speculative and conclusory"—CBRE was at least on notice that they existed. Here, CBRE did not learn until Friday that Harnden would be offering this evidence in Reingold's stead. CBRE has never seen any computation nor any supporting documents.

Pace's contentions under the Rule 37(c) factors are meritless. (*See generally* CBRE Ltr. Mot. § 2.B.)  Each is addressed below.

*Pace's explanation for its failure to disclose.* In a colloquy with the Court on Friday, Pace represented that Harnden's intended damages opinions were not predicated on the same methodology as Reingold's:

> THE COURT:  . . .  And the other thing I'm wondering about is Harnden -- *is his methodology for doing this calculation the same* methodology as the defendant's purported expert?
> MR. GOLUB: *No.* It's a simple mathematical calculation. I can give it to you right now.
>                         (Trial Tr. 671:18–22 (emphasis added).)

Now, in its letter motion, Pace changes course and admits that Harnden's testimony is a repackaging of Reingold's rejected expert testimony. (Pace Ltr. Mot. 2.) Contrary to Pace's suggestion, the fact that the Court (correctly) excluded Reingold's supported opinions does not mean that they can be re-packaged and presented to this jury in the form of a lay witness opinion. To do so would entirely undermine the Court's exclusion of those opinions for their unreliability in the first place.

Moreover and regardless of who is to offer this evidence, Pace had an obligation to disclose it. Pace conceded that it has not disclosed Harnden's computations.[2] Astonishingly, it *still* has not done so, even in its letter motion filed today.

---

[2] Indeed, Pace has not even identified the nature of the alleged damages opinion it intends to offer contending, on the one hand, that it "doesn't even have to [advance] a precise calculation" (Trial Tr. 663:19–664:9), while simultaneously arguing to the Court that Harnden's opinion should be admitted precisely because it is a "simple mathematical calculation." (*Id.* at 671:21–22.)

December 4, 2022
Page 3

*Prejudice to CBRE.* Pace incomprehensibly claims that CBRE is not prejudiced by Pace's transparent gamesmanship and open disregard for its discovery obligations. (*Id.*) As discussed above, CBRE has never seen Pace's computation; has never seen the supporting documents; and has never asked Harnden or any other Pace witness—*including Reingold, who only disclosed the damages opinion after discovery was closed*—any questions about Pace's damages calculations. The prejudice to CBRE is manifest.

*Possibility of a continuance.* Pace's argument here is pure gaslighting. Pace urges that the Court noted on Friday that CBRE would not be prejudiced so long as it is entitled to take a "short, limited deposition of Harnden." (*Id.*) As the Court well knows, that is emphatically not what the Court said. To the contrary, the Court simply raised that as a theoretical example of the kind of lesser sanction that courts sometimes impose:

> THE COURT: To me, that is the real issue, that is one of the real issues. The issue of whether or not, in theory, a lay witness can give this kind of testimony, that's one issue. But even if a lay witness could give this testimony, to meet the bigger and more pressing issue is the fact that it seems the plaintiffs were not on notice of this. And whether or not the sanction for that should be preclusion of this testimony -- if this testimony is otherwise admissible -- or whether there should be some lesser sanction.
> *For example, since we break at 2:30 most days, maybe the plaintiff should be entitled to then depose this witness about the methodology perhaps at the defendant's expense during one of those days.* To me that's what the more pressing issue is. These other issues are issues as well and some of those other issues may, in fact, be dispositive. But the real issue here, which I haven't heard anything else from the defendants on, is that the plaintiffs were not given notice that this witness was going to be testifying about damages.
> (Trial Tr. 673:12–674:4 (emphasis added).)

That procedure would be woefully insufficient in the circumstances of this case. It ignores all of the additional work that CBRE should have had the opportunity to conduct *in advance of the trial* and that cannot possibly be done while it is presenting evidence to a jury that already has grown impatient. For example, to adequately prepare for this ambush, CBRE (at a minimum) would need discovery about:

- Harnden's experience with these operating expenses, escalations, and compounding rent in long-term commercial leases.
- The specific transactions Harnden has done to give him this experience.
- The documents supporting Harnden's experience.
- How Harnden brought putative experience to bear in analyzing Pace's leases. And, if not, why not?
- Whether Harnden had been working with Reingold or some other undisclosed expert to get up to speed. If so, who is this person, and what credentials and experience does he/she possess?

December 4, 2022
Page 4

In addition to the foregoing, CBRE would also need time to have its own expert (or another expert) address the still-undisclosed computation and the various assumptions being made about why certain expenses in the subject lease are not consistent with market. CBRE must have the opportunity to review all analogous market transactions and take discovery about them. Anything less than that would not adequately prepare CBRE to deal with Pace's surprise evidence. That amount of discovery simply cannot be done in an afternoon in the middle of a jury trial. And to do so would deny CBRE of the opportunity to evaluate that information through fulsome discovery, would prejudice CBRE its preparations for the trial day, and would reward Pace for its disclosure violations to CBRE's extreme prejudice.

*Importance of the evidence.* Recycling its argument—and even its language—from the *Daubert* motion, Pace *again* claims that precluding this evidence "would be outcome-determinative." Pace is correct. Precluding this evidence would be outcome-determinative on Pace's claims for compensatory damages. That is the only appropriate sanction for Pace's unabashed and flagrant violations of its discovery obligations. (*See, e.g.*, CBRE Ltr. Mot. 6–7 (collecting cases).)

Pace's cited cases (*see* Pace Ltr. Mot. 2) do not compel an alternative conclusion, and they are a repackaging of the arguments that Pace made in its *Daubert* motion[3] and to which CBRE already has responded.[4] Moreover, none of Pace's cited cases has any bearing on a party's attempt to end-run a Court's preclusion motion by introducing that very same testimony under the guise of lay opinion.

### C. The *Bigelow* Principle Is Irrelevant.

Pace cites the *Bigelow* principle—again blatantly recycling arguments from its *Daubert* opposition[5] and to which CBRE already has responded.[6] CBRE will not re-argue those positions here.

Importantly, Pace misapprehends the issue as it relates to the present motion. *Bigelow* and its progeny support the notion that, where a party is unable to present damages with precision as a result of the other party's malfeasance, the wronged party is afforded a "more liberalized standard

---

[3] *Compare* Pace Ltr. Mot. 2 (citing *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159–60 (2d. Cir. 2012); and *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213 (2d Cir. 2009)); *with* Pace Memo of Law in Opposition to Exclude Putative Expert Suzy Reingold ("Pace Reingold *Daubert* Opp'n") 23, ECF No. 288 (citing same for same propositions).

[4] *See* CBRE Reply Memorandum of Law in Further Support of Plaintiff's Motion to Preclude Putative Expert Suzy A. Reingold ("CBRE Reingold *Daubert* Reply") n.8, ECF 300 (distinguishing *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159–60 (2d. Cir. 2012); and *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213 (2d Cir. 2009)).

[5] *See* Pace Reingold *Daubert* Opp'n 15.

[6] *See* CBRE Reingold *Daubert* Reply 5.

December 4, 2022
Page 5

of proof" in regard to the articulation of the amount of its incurred damages. *See Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 343 (1946). This caselaw has no bearing on the present situation. The problem with Harnden's purported testimony is not the precision of calculating damages. Rather, the problem is that Pace never disclosed Harden's intended testimony, his alleged computations, or otherwise produced any evidence in support thereof.

### II.  Harnden Cannot Testify on Pace's Damages.

#### A.  Harnden Cannot Testify as a Lay Witness.

For the reasons explained in CBRE's opening letter, Harnden is categorically unqualified to offer lay witness opinion testimony about Pace's alleged damages. In arguing otherwise, Pace fails to address any of Rule 701's three requirements for such testimony. In fact, Pace has already outlined at trial the reasons why Harnden's damages testimony would be improper.

*First*, Pace does not explain how Harnden's damages testimony would be "rationally based on [his] perception." Fed. R. Evid. 701(a). That is because it could not be. Harnden claims he hired *Siegel* specifically because he offered the commercial real estate expertise that Harnden lacked and that he expected *Siegel's* help in negotiating with Wenat (while out of the other side of his mouth saying Siegel was to have nothing to do with the Wenat negotiations). (*See* Trial Tr. 530:15–531:2; 571:9–12; 612:19–22.) Harnden's theory is that he outsourced the job to Siegel because he needed Siegel's expertise to determine how much Pace should pay in rent escalations, operating costs, and taxes—*i.e.*, the considerations underlying Pace's outlandish $60,000,000 damages figure. Now, in an about face, he claims he knows this information and can present it in a routine mathematical presentation (still undisclosed).

Not only that, Harnden also testified that it was Marc Glimcher, Pace's CEO, who determined the terms of the above-market deal with Wenat, and that Glimcher did so without *any* market analysis. (Trial Tr. 589:25–590:8.) He admitted that he never even spoke with Glimcher about the amount that Pace ultimately agreed to pay because it was "[n]ot [his] job to do that." (Trial Tr. 580:10–15.) If Harnden felt it was not his job to speak about the issues to his own boss, he is in no position to speak about them now to a jury.

Further, that is precisely the reason why Pace hired an *expert* to offer damages opinions. Between Glimcher's gut-based negotiating strategy and Harnden's role as a messenger in the negotiations (*see* M. Glimcher Dep. Tr. at 133:3–8, 112:16–17 ECF No. 185–7), Pace was completely unsuited to offer the opinions itself. But now that its expert has been precluded from opining on damages calculations, Pace pretends the calculations she performed—the same calculations that were once exceedingly "complex terms and concepts" (*see* Pace Reingold *Daubert* Opp'n 24)—are back-of-the-napkin math.

Pace relies exclusively on cases holding that an experienced employee can offer lay opinion testimony on her own company's lost profits—*i.e.*, something that *could* be rationally based on her own perception.[7] (*See* Pace Ltr. Br. at 3–4.) But for the reasons explained above, Harnden—

---

[7] *See, e.g., Allied Sys., Ltd. v. Teamsters Auto. Transp. Chauffeurs, Demonstrators & Helpers, Loc. 604, Affiliated with the Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen &*

December 4, 2022
Page 6

who is not a real estate expert—does not have the requisite "particularized knowledge . . . by virtue of his or her position in the business" to testify about damages stemming from commercial real estate transaction. Fed. R. Evid. 701, Advisory Committee's Notes (2000). That Harnden holds a degree from Yale and has taken continuing education classes at New York University in accounting and business management is irrelevant to his limited knowledge of the commercial real estate industry. (Pace Ltr. Br. 4.)

*Second*, Pace's letter suggests that Harnden can testify on damages because he *is* an expert possessing the "specialized experience" that might be helpful to the jury. For the reasons explained above, that is plainly not the case, but if it were, it would necessarily disqualify Harnden from offering lay opinion testimony on this issue. *See* Fed. R. Evid. 701(c) ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . not based on . . . specialized knowledge within the scope of Rule 702."). *See also Baumgart v. Transoceanic Cable Ship Co.*, No. 01 CIV.5990 (LTS) (HBP), 2003 WL 22520034, at *3 (S.D.N.Y. Nov. 7, 2003) (excluding non-expert whose "analysis clearly relies on technical or specialized knowledge within the scope of Rule 702" where the analysis involved "extrapolations and inferences that present[ed] sufficient reliability concerns to bring [it] within the scope of Rule 702").

**B. Harnden Cannot Testify as an Expert Witness.**

To the extent Pace seeks to offer Harnden as an expert, Pace's effort must be rejected because he was never disclosed, as required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.

Respectfully submitted,

*/s/ Jeff E. Scott*

Jeff E. Scott

cc: All counsel of record (via ECF)

---

*Helpers of Am.*, 304 F.3d 785, 792 (8th Cir. 2002) (a company's accountant could rely on accounting principles to quantify lost profits damages because he had 'particularized knowledge . . . by virtue of his or her position in the business'") (quoting Fed. R. Evid. 701 Advisory Committee's Notes (2000)); *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995) (a company president was "fully capable of examining the company's sales of a period of years" because he had "personal knowledge of his business"); *W. Oilfields Supply Co. v. Goodwin*, 461 F. App'x 624, 626 (9th Cir. 2011) (a farmer with 45 years of experience could offer "firsthand [lay witness] testimony regarding his estimated crop yield"); *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 153 (5th Cir. 2017) (a company officers could offer testimony on lost profits because "the witness has direct knowledge of the business accounts underlying the profit calculation"); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993) (company owner could testify as to lost profits because of given his "knowledge and participation in the day-to-day affairs of his business").