UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CBRE, INC., | : |
|                           Plaintiff, | : |
| -against- | Case No.: 1:17-cv-02452-ALC-SN |
| THE PACE GALLERY OF NEW YORK, INC. AND THE PACE GALLERY, LLC, D/B/A PACE GALLERY, | : |
|                           Defendants. | : |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW

**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, California 90067

**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017

**GREENBERG TRAURIG, LLP**
1 North Lexington Avenue, Suite 800
White Plains, New York 10601

**ARGUMENT**[1]

CBRE is entitled to judgment as a matter of law in its favor on all claims and affirmative defenses. The sole issue that should be presented to the jury is the quantum of damages owed to CBRE for its claim for a commission relating to the Pace-Wenat lease dated June 11, 2015. (D193.)[2]

Rule 50 of the Federal Rules of Civil Procedure provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
> (Fed. R. Civ. P. 50(a)(1).)[3]

"Judgment as a matter of law is appropriate only if the court can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party." *Warren v. Pataki*, 823 F.3d 125, 139 (2d Cir. 2016). "A Rule 50 motion may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Id.*

---

[1] Unless otherwise stated, all capitalized terms herein have the same meaning as in the Joint Pre-Trial Order. (Joint Pre-Trial Order ("JPTO"), ECF No. 241.)

[2] References to "D#" are to Defendants' Trial Exhibits. References to "P#" are to Plaintiff's Trial Exhibits.

[3] Unless otherwise indicated, this brief omits all internal citations, quotation marks, footnotes, brackets, alterations, and ellipses from citations.

**I.     CBRE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PACE'S COUNTERCLAIMS.**

   **A.     Pace's Claims for Compensatory Damages Fail as a Matter of Law.**

CBRE is entitled to judgment as a matter of law on Pace's counterclaim for breach of contract, counterclaim for breach of the implied covenant of good faith and fair dealing, and on Pace's counterclaim for breach of fiduciary duty to the extent Pace seeks compensatory damages.

Damages is a required element of contract and implied covenant claims. *See, e.g.*, *Ross Stores, Inc. v. Lincks*, No. 13-cv-1876 (SAS), 2013 WL 5629646, at *3 (S.D.N.Y. Oct. 4, 2013) (dismissing counterclaim for breach of contract for "fail[ing] to allege damages resulting from the alleged breach"); *Util Auditors, LLC v. Honeywell Int'l Inc.*, No. 17-cv-4673 (JFK), 2018 WL 5830977, at *4 (S.D.N.Y. Nov. 7, 2018) (dismissing implied covenant claim for lack of damages). The proponent of a breach of fiduciary claim seeking compensatory damages must also prove those damages. *See Semi-Tech Litig., LLC v. Bankers Trust Co.*, 353 F. Supp. 2d 460, 482 (S.D.N.Y. 2005) ("[A] requirement of proximate causation applies . . . where compensatory damages are sought for a breach of fiduciary duty under New York law."), *aff'd*, *In re Bankers Trust Co.*, 450 F.3d 121 (2d Cir. 2006). On December 5, 2022, the Court precluded Pace from introducing evidence of its alleged damages as a sanction for failing to comply with its discovery obligations. (Trial Tr. 786:3-19.) As a result, no evidence of Pace's alleged damages has been received into evidence. Because Pace introduced no evidence of these damages, CBRE is entitled to judgment as a matter of law in its favor on these counterclaims.

   **B.     Pace's Demand for Punitive Damages Fails as a Matter of Law.**

For two reasons, CBRE is entitled to judgment as a matter of law on the demand for punitive damages Pace asserts through its breach of fiduciary duty counterclaim.

*First*, the breach of fiduciary duty counterclaim is legally defective because what remains of it is an impermissible freestanding demand for punitive damages. *See Excelsior Capital LLC v. Allen*, 536 F. App'x 58, 60 (2d Cir. 2013) (summary order) ("[A] demand for punitive damages is not a freestanding claim; rather, it is parasitic and possesses no viability absent its attachment to a substantive cause of action . . . ."). The remnant of Pace's breach of fiduciary duty counterclaim is wholly duplicative of Pace's "faithless servant" affirmative defense: through both, Pace seeks to nullify CBRE's commissions. The sole difference is that Pace also seeks punitive damages through the counterclaim. In these circumstances, the breach of fiduciary duty "counterclaim" is tantamount to an improper freestanding demand for punitive damages that cannot be submitted to the jury.

*Second*, no reasonable jury could award punitive damages based on the trial evidence. Under New York law, "the standard for imposing punitive damages is a strict one," *Marinaccio v. Town of Clarence*, 20 N.Y.3d 506, 511 (N.Y. 2013), and punitive damages are available only in the "singularly rare case," *APW, Inc. v. Marx Realty & Improvement Co.*, 739 N.Y.S.2d 114, 115 (1st Dep't 2002). The New York Court of Appeals has held that "punitive damages will be awarded only in exceptional cases, [and] the conduct justifying such an award must manifest spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton." *Marinaccio*, 20 N.Y.3d at 511. Applying New York law, the Second Circuit has held that the misconduct "must be close to criminality" to support an award of punitive damages. *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 843 (2d Cir. 1967) (Friendly, J.). "[L]ike criminal conduct, it must be clearly established." *Id.*; *accord Camillo v. Geer*, 587 N.Y.S.2d 306, 309 (1st Dep't 1992) ("An award for punitive damages must be supported by clear, unequivocal, and convincing evidence.").

3

"Punitive damages are not intended to compensate or reimburse the plaintiff." *Zurich Ins. v. Shearson Lehman Hutton*, 84 N.Y.2d 309, 316 (N.Y. 1994). "They are intended as punishment for gross misbehavior for the good of the public and have been referred to as a sort of hybrid between a display of ethical indignation and the imposition of a criminal fine." *Home Ins. v. Am. Home Products Corp.*, 75 N.Y.2d 196, 203 (N.Y. 1990). In *Marinaccio*, the New York Court of Appeals vacated an award of punitive damages where the defendant was found liable for "intentional diversion of storm water onto plaintiff's property, which caused extensive damage to his land." *Id.* at 509. Although "the injury was considerable and the tortious acts undeniably intentional," this conduct did not meet New York's strict standard to support an award of punitive damages. *Id.*

Similarly, the evidence in this case does not permit an award of punitive damages. Pace's breach of fiduciary duty counterclaim is premised on Stuart Siegel's provision of commonplace market information to Pace's landlord. Absolutely no evidence has been adduced that suggests Siegel either sought or obtained any personal benefit in doing so or that he either intended to or actually harmed Pace's interest in doing so. Drawing all inferences and making credibility assessments in Pace's favor, *see Warren*, 823 F.3d at 139, the Court should find that no reasonable jury could award punitive damages for the simple reason that there is no evidence showing that Pace was harmed by Siegel's conduct.

The following undisputed facts must be credited for purposes of analyzing this motion:

- The information shared is of a type that is commonly available in the marketplace. (Trial Tr. 827:25–829:5, 830:19–22, 223:7–17, 703:25–704:2, 872:12–13, 954:4–9, 1029:13–16, 896:5–16, 952:14–25.)

4

- The comps Siegel shared were all substantially lower than the rents Sam Weinberg demanded. (*Id.* at 1031:8–18, 826:15–827:7, 205:12–21.)

- The CoStar report showed numerous properties with currently available space and numerous vacant lots that could support new construction. (*Id.* at 1047:8–1050:24.)

- Mr. Siegel sent the requested information in response to a request and with the intent of trying to help his client. (*Id.* at 205:10–21, 208:6–13, 952:14–25.)

- Mr. Weinberg did not rely on the materials Siegel provided in negotiating lease terms with Pace. (*Id.* at 1047:8–1050:24, 1028:8–20.)

- Siegel never spoke with the Weinbergs, never sought or obtained business from the Weinbergs, and never was paid a dime for sharing such information. (*Id.* at 1086:22–1087:3, 1077:1–14.)

On these facts, no reasonable juror could find that Siegel's conduct "manifest[ed] spite or malice, or a fraudulent or evil motive on the part of the [plaintiff], or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton." *Marinaccio*, 20 N.Y.3d at 511. Accordingly, CBRE is entitled to judgment as a matter of law on the demand for punitive damages.

**II.   CBRE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF MUTUAL MISTAKE IN THE NOVEMBER 2014 AGREEMENT.**

CBRE is entitled to judgment as a matter of law on the issue of mutual mistake in the November 2014 Agreement. (D071.) To the extent the Court determines that Pace's affirmative defenses have not been abandoned by Pace's failure to properly request jury instructions, CBRE is entitled to judgment as a matter of law on Pace's forty-third, forty-seventh, and forty-eighth "affirmative defenses" based on the merger clause in the November 2014 Agreement. (*See* Defendants' Jury Instructions 25, 26, ECF No. 315.)

5

"A contract can be reformed on the basis of mutual mistake if the writing does not accurately reflect the mutual intention of the parties, and parol evidence is admissible to establish the existence of the mutual mistake." (SJ Order at 14.) "Thus, the proponent of reformation must show in no uncertain terms, not only that mistake exists, but exactly what was really agreed upon between the parties." (*Id.*)

The undisputed evidence at trial showed that all witnesses involved—Siegel, Harnden, Paul Walker, and Elaine Kleinberg—intended and understood that the November 2014 Agreement would solely cover a sublease assignment and that the parties had no intent for that agreement to replace the separate March 2014 Agreement pertaining to Pace's search for rental space.[4] CBRE is entitled to judgment as a matter of law reforming the November 2014 Agreement to remove all references to acquiring space and a ruling that the March 2014 Agreement governs CBRE's claims in this case.

The trial testimony showed that all parties intended the engagement solely to cover subleasing floors of Pace's space at 32 East 57th Street and not to acquire any space in Chelsea or elsewhere. Harnden hired Walker to sublease those floors, he never asked Walker to look for space, and he did not understand that Walker's assignment would include looking for space. (Trial Tr. 632:18–633:3.) Harnden read the November 2014 Agreement before signing and it and thought it was a sublease agreement. (*Id.* at 633:8-19.) Walker and Siegel each testified that they understood that Harnden hired Walker for a sublease assignment only and that is the only assignment Walker performed. (*Id.* at 677:14–679:1, 682:2-13, 137:4–138:6, 138:22–141:16.) Elaine Kleinberg also

---

[4] (*See, generally* Trial Tr. 138:22–142:8 (Siegel), 630:2–634:5 (Harnden), 680:2–682:17 (Walker), 1232:20–1234:7 (Kleinberg).)

testified that the November 2014 Agreement mistakenly referenced acquisition of space because the agreement was the based on the wrong template. (*Id.* at 1232:20-21; 1233:2-1234:7.)

The documentary evidence associated with the November 2014 Agreement refers to it exclusively in terms of a sublease assignment. In an email attaching the draft agreement, Walker referred to it as "an agreement to sublease the entire 6th and 8th floors at 32 East 57th Street." (P064.) The subject line of that email is "Sublease 32 East 57th Street" and the email refers to Walker conducting "an analysis of what a sublease deal would look like." (*Id.*) The file name of the attached agreement is "Pace Sublease Agreement.pdf." (*Id.*) Similarly, in an email attaching the final agreement, Walker described it as "the fully executed sublease agreement." (D071.) The subject of that email is "Executed Sublease Document," and the file name of the attached agreement is "Pace Executed Sublease Agreement.pdf." (*Id.*)

There is no evidence to the contrary. Accordingly, no reasonable juror could find that there was *not* a mutual mistake in including language in the November 2014 Agreement relating to the acquisition of space, and CBRE is entitled to judgment as a matter of law on Pace's "affirmative defenses" based on the merger clause of the November 2014 Agreement.

### III.    CBRE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PACE'S FAITHLESS SERVANT DEFENSE.

CBRE is entitled to judgment as a matter of law on Pace's faithless servant defense.

To prevail on its faithless servant defense, Pace must prove by a preponderance of the evidence that Siegel "breached [his] duty of loyalty to [Pace] in a way that was substantial and material to the performance of [his] duties." *Stefanovic v. Old Heidelberg Corp.*, No. 18 CV 2093-LTS-KNF, 2019 WL 3745657, at *3 (S.D.N.Y. Aug. 8, 2019); *accord Sanders v. Madison Square Garden, L.P.*, No. 06-civ-589 (GEL), 2007 WL 1933933, at *4–5 (S.D.N.Y. July 2, 2007) (Lynch, J.) ("To show a violation of the faithless servant doctrine, an employer must show (1) that the

7

employee's disloyal activity was related to the performance of his duties, and (2) that the disloyalty permeated the employee's service in its most material and substantial part."); *see also Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 238 & n.15 (2d Cir. 2020) (collecting cases instructing this standard).

CBRE recognizes that the Court's proposed draft jury instructions reflect a different standard, and CBRE also has objected to those instructions concurrently with this submission. Under the standard reflected in the Court's draft jury instructions, "[t]o establish its faithless servant defense, Pace must prove, by a preponderance of the evidence, that[] (1) CBRE engaged in misconduct by communicating with a representative of Pace's landlord or by omitting to disclose any conflict of interest to Pace, or by omitting to disclose any conflict of interest to Wenat; and (2) CBRE's misconduct was a breach of its duty of loyalty or good faith to Pace." (*See* The Court's Instructions of Law to the Jury 21.)

Here, no reasonable juror could conclude that Siegel's conduct breached his duty of loyalty to Pace under any standard. As explained above, the undisputed evidence at trial confirms that Siegel provided commonplace and widely available market information to Pace's landlord. (Trial Tr. 827:25–829:5, 830:19–22, 223:7–17, 703:25–704:2, 872:12–13, 954:4–9, 1029:13–16, 896:5–16, 952:14–25.) The comps shared were substantially lower than Weinberg's demands, and the CoStar report revealed numerous alternative buildings with available space and vacant lots that could support new construction. (*Id.* at 1031:8–18, 826:15–827:7, 205:12–21, 1047:8–1050:24.) Weinberg did not use this information in any way in determining the rental rate that he intended to charge. (*Id.* at 1047:8–1050:24, 1028:8–20.)

The undisputed evidence shows that Siegel made no attempt to secure an improper personal benefit in sharing the information: he had no further contact with the landlord whatsoever and

8

made no attempt to get their business. (*Id.* at 1086:22–1087:3, 1077:1–14.) There is not even a logical motive suggested whereby Siegel would have personally benefited from providing the information. The only evidence in the record is that he shared the requested information solely to support his client.

On top of that, there is no dispute that Siegel extensively performed his obligations under the agreement over a 16-month period, including identifying numerous suitable spaces for Pace, arranging tours, providing pricing information, giving advice on pricing, and negotiating with multiple landlords regarding potential deals. (*See, e.g.*, *id.* at 67:12–69:13, 98:4–23, 539:11–540:4.)

Accordingly, CBRE is entitled to judgment as a matter of law on Pace's faithless servant affirmative defense. For the same reasons, to the extent any aspect of Pace's breach of fiduciary duty counterclaim remains in the case, CBRE is entitled to judgment as a matter of law on it as well.

## IV. CBRE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON LIABILITY FOR ITS BREACH OF CONTRACT CLAIMS.

CBRE is entitled to judgment as a matter of law on liability on its breach of contract claim. "Under New York law, a breach of contract plaintiff must prove the four following elements: (1) a valid and enforceable agreement; (2) adequate performance by the plaintiff; (3) breach by the defendant; and (4) damages." *Music Royalty Consulting, Inc. v. Reservoir Media Mgmt., Inc.*, No. 18-civ-9480 (CM), 2022 WL 1137137, at *12 (S.D.N.Y. Apr. 18, 2022).

Pace has conceded that the agreements are valid and enforceable. (Order dated October 27, 2022, ECF No. 271.)

No reasonable juror could find that CBRE did not adequately perform the contract. Siegel's extensive performance under the agreement is undisputed, and Harnden testified that Siegel did

9

everything that was asked of him. No reasonable juror could accept Pace's unsupported contentions that CBRE and Pace failed to agree on a "strategy." To the contrary, the undisputed evidence shows that CBRE promptly adapted to Pace's frequently changing needs and supplied Pace exactly everything for which it asked. (*See, e.g.*, Trial Tr. 452:25–453:22, 476:17–478:19, 571:4–572:18, 577:14–9.) By the same token, no reasonable juror could accept Pace's unsupported contention that Siegel made a "business decision" within the meaning of the March 2014 Agreement by sending commonplace market information to Pace's landlord. (*See, e.g.*, *id.* at 250:23–252:25.) The only conceivable reading of that provision is that Pace had the right to make the ultimate decisions of consequence: what its needs were, what building it wanted, how much it was willing to pay, and so forth. That provision does not apply to a broker's day-to-day decisions in performing his job functions, whether it be to arrange a space tour, seek pricing information from a landlord, or share market information with the intent of grounding an unrealistic landlord in the reality of the marketplace. Accordingly, CBRE is entitled to judgment as a matter of law on the performance element of its contract claims.

No reasonable juror could find that Pace did not breach the agreement. The Court has already held that the March 2014 Agreement is an exclusive agreement under which CBRE is entitled to a commission upon the signing of the lease during the relevant term. (SJ Order at 17.) There is no dispute that three leases are all subject to the exclusive agreement (a lease for a portion of the new building in March 2015 (D163), a short-term renewal at the old building during March 2015 (D193), and a lease for the entire building in June 2015 (D164)). There is also no dispute that Pace paid no commission on any of these leases. Accordingly, CBRE is entitled to judgment as a matter of law on the breach element of its contract claims.

10

Finally, on the short-term renewal lease (D193), a reasonable juror would be compelled to find that the damages are $94,943.20. (Trial Tr. 1152:2-8.) That lease calls for fixed rental payments; accordingly, the commission due can be precisely calculated by multiplying CBRE's standard commission rates by the rents in the short-term renewal lease. CBRE is therefore entitled to judgment as a matter of law on the damages element of its claim for a commission on the short-term renewal lease.

## V. CBRE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PACE'S REMAINING "AFFIRMATIVE DEFENSES."

Finally, CBRE is entitled to judgment as a matter of law on Pace's remaining "affirmative defenses." As the Court has recognized, Pace did not properly request jury instructions for any of its "affirmative defenses." (Trial Tr. 776:1-3.) Many of the "affirmative defenses" are plainly not cognizable affirmative defenses in any event. The Court should deem them all abandoned. In any event, Pace did not meet its burden to satisfy any of the defenses in its improper "Schedule" to its proposed verdict form. (Schedule A to Defendants' Jury Verdict Form, ECF No. 315, 17–27.)

## CONCLUSION

The Court should grant CBRE judgment as a matter of law on all claims and defenses in this case with one exception. The sole issue that should be presented to the jury is the quantum of damages owed to CBRE for its claim for a commission relating to the Pace-Wenat lease dated June 11, 2015.

Dated: December 7, 2022          Respectfully submitted,
New York, New York

                                 Greenberg Traurig, LLP

                                 By: /s/ Jeff E. Scott
                                     Jeff E. Scott

**GREENBERG TRAURIG, LLP**
Jeff E. Scott (*admitted pro hac vice*)
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel. (310) 586-7715
scottj@gtlaw.com

**GREENBERG TRAURIG, LLP**
Jennifer A. Surprenant
One Vanderbilt Avenue
New York, New York 10017
Tel. (212) 801-9200
surprenantj@gtlaw.com

**GREENBERG TRAURIG, LLP**
Benjamin Wood
1 North Lexington Avenue, Suite 800
White Plains, New York 10601
Tel. (914) 286-9211
woodb@gtlaw.com